## W. B. TAYLOR AND J. P. TAYLOR v. THOMAS V. EDMUNDS.

### (Filed 30 October, 1918.)

**1. Deeds and Conveyances—Contracts—Fraud or Mistake—Evidence—Partnership—Principal and Agent.**

Where there is evidence tending to show that two partners, acting as the sales agent for lands, were to receive the balance of the land as compensation after a part thereof had been sold to other parties in various parcels; that they knowingly and intentionally procured the owner to make a deed to them of a strip of adjoining land not included in the contract, under circumstances tending to show that he signed the deed, among several others submitted at the time, relying upon the representation of one of the partners that it would close the deal, and without knowing at the time that the land conveyed was not included in the agency contract: *Held,* in the owner's suit to set aside the deed for fraud and mistake against one of the partners, that admissions in the evidence and pleadings of the other partner that he had reconveyed his part of the *locus in quo* to the owner without consideration are competent, and upon all of the evidence the case was properly submitted to the jury.

**2. Deeds and Conveyances—Contracts—Fraud or Mistake—Evidence.**

Upon evidence tending to show that the plaintiff was induced by the misrepresentations of his selling agent of lands, knowingly and intentionally made, to execute to the latter a deed to lands for compensation for his services not covered by the selling contract; that the agency covered many like transactions and the deed in question was sandwiched between other deeds handed the owner by the agent at the same time, with the remark that they completed the contract; that the owner signed them all without knowledge that he had conveyed land not therein embraced: *Held,* as between the immediate parties, evidence of fraud in the factum, there being no consideration; and notwithstanding the owner was an educated man and capable of informing himself at the time, it was sufficient to take the case to the jury upon the issue of fraud and mistake, in the owner's suit to set the deed aside.

**3. Contracts, Written—Deeds and Conveyances—Parol Agreements—Reformation.**

A written contract concerning lands may not be reformed for mistake of the parties to incorporate therein a prior agreement by parol, unless it is shown that the parol agreement was a part thereof and fraudulently or unintentionally omitted by the parties or their draftsman.

**4. Limitation of Actions—Deeds and Conveyances—Contracts—Reformation Mistake—Pleadings—Answer—Burden of Proof.**

Where the defendant in an action to set aside a deed to lands for fraud and mistake alleges, as the basis of a counterclaim, that the deed should

be reformed to include a parol agreement by the plaintiff, the owner, to build houses of a certain class to enhance the value of the property, the plea of the statute of limitations put the burden upon the defendant, in the cross-action, to show that the statute of limitation, Revisal, sec. 395 (9), had not barred his right, by a lapse of more than three years from the time he discovered the mistake to the time he had filed his pleading, and in failing to introduce such evidence he is concluded as a matter of law.

APPEAL by defendant from Shaw, J., at January Term, 1918, of FORSYTH.

This is an action to set aside a deed upon the ground of fraud and mistake. The jury having found the issues in favor of the plaintiffs, the defendant excepted and appealed from the judgment thereon.

*Lindsay Patterson, Jones & Clement, and Craige & Vogler for plaintiffs.*
*Fred M. Parrish and A. E. Holton for defendant.*

CLARK, C. J. The plaintiffs conveyed to Edmunds and Jerome the property in controversy, which is a strip 10 feet wide and 610 feet long, and allege that the deed was executed through mistake on their part and fraud or mistake on the part of the defendant Edmunds. They further allege that the defendant Edmunds designedly sent the deed for said strip to the plaintiff together with deeds for property covered by the written agreement, which written agreement did not include this strip, for the purpose of having it executed along with the other deeds at the same time, and thus fraudulently obtain title to said strip.

T. V. Edmunds and W. G. Jerome were partners, acting as selling agents under a contract with plaintiffs executed 22 March, 1912, according to the terms of which whenever Edmunds and Jerome should have sold $50,000 worth of the property described in said contract, the balance of the property therein named should be conveyed by plaintiffs to them, or to whomsoever they might designate. Jerome testified that after they had sold that amount, they divided the remaining unsold lots and had deeds prepared for the purpose of obtaining title; that "he and the defendant Edmunds decided that they ought to have the property in controversy (*i. e.,* this strip, 10 feet wide and 610 feet long, lying alongside of the other property); that they knew that this property was not included in the contract, but that the defendant Edmunds told him to have a deed prepared which would convey to each of them an undivided one-half interest therein, and that they would *take a chance* on the plaintiffs executing it." In pursuance of this direction from Edmunds, Jerome says he submitted to the plaintiffs for execution the deed for this strip sandwiched in between three other deeds and the contract,

and all of said deeds were duly executed, and when he carried the deed to the property in controversy back to Edmunds, Edmunds made an exclamation of surprise, and stated "that he did not think Taylor Bros. would execute it."

Assignments of error 1 and 2 are to the admission of the testimony of W. G. Jerome, to whom jointly with the defendant, T. V. Edmunds, the deed for said strip of land was executed by the plaintiffs; that without consideration, he had reconveyed his half interest in the property in controversy and the admission in evidence of his deed of reconveyance.

This was competent in corroboration. "Actions speak louder than words," and the best proof possible in corroboration of Jerome's statement of the transaction is the fact that he voluntarily reconveyed the property to the grantors. He was a party to the alleged fraudulent transfer of the property from the plaintiffs to himself and Edmunds. Why should he voluntarily reconvey if he thought himself entitled to the property?

The motion to nonsuit was properly denied. It was in evidence that the plaintiffs had had numerous dealings with Edmunds and Jerome, covering a long period of time, and had executed for them deeds to property amounting to more than $50,000; that the plaintiffs knew that the strip of land in controversy was not included in the contract, and that the defendant also knew that this strip of land was not included therein. There is also the above evidence that for the purpose of obtaining said strip the defendant had a deed prepared embracing it and sent to the plaintiffs, sandwiched in with three other deeds and a contract, by the witness W. G. Jerome, who said when he delivered these papers, "Here are the papers to wind up that property."

It is true, as the defendant contends, the plaintiffs were educated men, and if they executed this deed merely by reason of their failure to read the same, they are bound by their voluntary act, and should not recover. *Dellinger v. Gillespie,* 118 N. C., 737. This is well-settled law, but the evidence in this case tended to show, and does show (as the jury find), that because of the confidential relationship existing between themselves and the defendant, covering a long course of dealings, during which they had executed a large number of deeds sent them by Edmunds and Jerome for lots sold by them, the plaintiffs had a right to assume that he would submit to them for execution deeds only for lands embraced in the contract, and that they were misled by the manner of submitting this deed to them for execution, sandwiched in with other deeds for property embraced in the contract of 22 March, 1912, and especially that they were misled by the false statement of the defendant's agent and cograntee, W. G. Jerome, that "these papers wind up that property."

By that the plaintiffs reasonably understood that these deeds, like all the previous ones, were for property embraced in said contract.

"The principle relied on by the defendant that when the means of knowledge were at hand and equally available to both parties, the party complaining must show that he made due inquiry is subject to much qualification (20 Cyc., 32, 33), and does not apply where there is actual, intentional fraud or misleading statements calculated to prevent inquiry and made under circumstances where they were calculated to allay suspicion." *Machine Co. v. Bullock,* 161 N. C., 1.

The mere fact that a grantor who can read and write signs a deed does not necessarily conclude him from showing, as between himself and the grantee, that he was induced to sign by fraud on the part of the grantee, or that he was deceived and thrown off his guard by the grantee's false statements and assurances designedly made at the time and reasonably relied on by him. *Gray v. Jenkins,* 151 N. C., 81, and cases there cited; *May v. Loomis,* 140 N. C., 350; *Griffin v. Lumber Co., ib.,* 514; *Floars v. Ins. Co.,* 144 N. C., 232; *Gwaltney v. Assurance Society,* 132 N. C., 925. Indeed, the principle is well settled that when there is fraud and misrepresentation in procuring the execution of the instrument the want of due care by the other party is no defense. Besides, this deed was made without any consideration for the conveyance of said property.

These circumstances were sufficient evidence to go to the jury to sustain the allegation of "fraud in the factum." The jury responded to the second issue that "the deed to the strip of land in question was executed by the mistake of the plaintiffs and by fraud and mistake on the part of the defendant Edmunds, as alleged by the plaintiffs." There was evidence to support such finding.

The jury found in response to the first issue that this strip of land, covered by the deed in question, but which was not in the paper-writing executed by the plaintiffs to Edmunds and Jerome on 22 March, 1912, was not left out of said contract by the mutual mistake of the parties or the mistake of the draftsman, as alleged by the defendant. The rights of third parties have not become involved, as the undivided half interest in the property in question is still held by the original grantee, T. V. Edmunds, the defendant in this action.

The contract of 22 March, 1912, stipulated that the plaintiffs were to build on each of three lots a dwelling-house of not less than six rooms. It is admitted that the plaintiff built the six-room houses as provided in the contract. There was no provision as to the style of the house, nor the cost.

The defendant in his amended answer setting up a counterclaim

alleged that there was an oral agreement prior to the above written contract, by which the plaintiffs agreed "to erect three houses of such a character as to enhance the value of said property and such as to induce a high-class residential section," and it is further alleged that this prior oral agreement was omitted from the written contract by the mutual mistake and oversight of the parties and the draftsman, and asked that the written contract be reformed so. as to embrace such provision. The plaintiffs denied the existence of such prior oral agreement, and it was not shown on the trial. On the contrary, Jerome, the defendant's partner, testified, "We had no contract that I know of, except the contract of 22 March, 1912."

There was no testimony introduced as to when the defendant discovered that this alleged prior oral agreement was left out of the written contract, and in the issues submitted to the court by the defendant there was no issue as to such alleged prior agreement. In view of the written contract, parol testimony was incompetent to show prior negotiations unless it had been shown that such agreement was a part of the contract of 22 March, 1912, and was omitted by mistake.

The court properly dismissed the defendants' counterclaim on this allegation, because it was barred by the statute of limitations. Revisal, 395 (9), provides that in an action for relief on the ground of fraud or mistake, "The cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting such fraud or mistake." The plea of the statute of limitations devolved upon the defendant, in his cross-action, the burden of showing such discovery. The statute begins to run from the discovery of the mistake and not from the breach of the contract. *Stubbs v. Motz,* 113 N. C., 458; *Modlin v. R. R.,* 145 N. C., 227; *Tuttle v. Tuttle,* 146 N. C., 484.

The written contract was made 22 March, 1912. This action was begun more than four years thereafter, on 12 May, 1916. In *Ely v. Early,* 94 N. C., 1, it was held that the statute runs to the time of filing the amended answer, setting up the counterclaim, which in this case was filed 11 January, 1918, or nearly six years afterwards. There being no testimony when the defendant discovered that the alleged prior agreement was omitted from the written contract, the court properly held that the counterclaim to reform the written contract of 22 March, 1912, by inserting such alleged prior agreement, if any, was barred by the three years statute of limitations.

No error.