H. M. DUNBAR v. TOBACCO GROWERS COOPERATIVE ASSOCIATION.

(Filed 2 December, 1925.)

**1. Contracts—Misrepresentation—Fraud.**

Where one as agent for the Tobacco Growers Association falsely represents to a prospective member certain material advantages that induce him to sign the membership contract, without affording him, an illiterate man, an opportunity to become informed as to its contents, and he, within a reasonable time afterwards, is informed of this misrepresentation, and requests the agent to take his name off the books as a member and cancel the contract: *Held,* the agent and the one to whom the false representations were made were not upon an equality as to the facts, and the law will avoid the contract for the fraud.

**2. Same—Agreement and Subject-Matter.**

Where one in a position to know assumes to have knowledge of the subject-matter of a contract, makes a material representation to another which induces him to sign it without being afforded an opportunity to ascertain them, the minds of the parties have not come to an agreement, and the party so induced may maintain his action to declare it void. The cases in which the representations were only promissory in character, not amounting to a factual representation, do not apply.

**3. Evidence—Nonsuit.**

On a motion to nonsuit upon the evidence by defendant, the evidence will be considered in the light most favorable to the plaintiff.

**4. Removal of Causes—Transfer of Causes—Motions—Remand.**

Where a cause has been transferred to another county than the one in which it was brought, on the ground of local prejudice, and two terms of court have been held in the latter county before the record or transcript has been received, and no steps have been taken to have it remanded until called for trial: *Held,* the order of removal may not be stricken out as a matter of right by the objecting party.

APPEAL by plaintiff from *Cranmer, J.,* at July Special Term, 1925, of ALLEGHANY.

Civil action to rescind or cancel contract between the parties for fraud alleged to have been practiced in its procurement.

Upon denial of any fraud, and counterclaim to recover damages for a breach of the contract, there was a verdict and judgment in favor of the defendant, the plaintiff having been nonsuited at the close of his evidence. Plaintiff appeals.

*Folger & Folger for plaintiff.*
*Burgess & Joyner and Kenneth C. Royall for defendant.*

STACY, C. J. The whole case pivots on the correctness of the involuntary nonsuit, entered at the close of plaintiff's evidence.

The plaintiff is an illiterate man who can neither read nor write. He was induced to sign the paper-writing, purporting to be a marketing contract between the parties, according to his allegation, upon the false and fraudulent representations of the defendant's agent as to its contents, among other things, to the effect that the defendant would pay to the plaintiff from 60 to 75 per cent of the market value of his tobacco in cash upon delivery, and issue negotiable certificates or scrip for the remainder, payable within 60 or 90 days, and further that the United States Government and the State of North Carolina were behind the defendant association and would guarantee its operations and obligations.

The plaintiff offered evidence tending to show his inability to read or write; that he asked to have the contract read at a meeting in the school house where others were signing similar contracts, but the defendant's agent stated it was too long and he had already explained its meaning and provisions; that the defendant's agent assured the plaintiff he would be paid 75 per cent of the cash value of his tobacco on delivery and receive a certificate for the balance "as good as gold"; that the government had agreed to furnish the money to pay off the first advancement; that if plaintiff didn't join then and pay his $3.00 membership fee, it would cost him $25.00 to join later when they had closed the books; that plaintiff, relying upon these representations, signed the contract at night by the light of a match without taking a copy, but during the next week, and on the day after he had heard the contract read, he went to defendant's agent and told him it did not contain the provisions as represented and he wanted his name removed therefrom; that the agent said he would see about it, though he never did.

The plaintiff offered to show the falsity of the representations made by defendant's agent, but this was excluded upon the theory that the alleged representations were only promissory in character and that they did not amount to such factual misrepresentations as are necessary to be shown in an action for fraud or deceit. *Cash Register Co. v. Townsend,* 137 N. C., 652; *Colt v. Kimball, ante,* 169.

Viewing the evidence in its most favorable light for the plaintiff, the accepted position on a motion to nonsuit, we think it is sufficient to go to the jury on the question as to whether the minds of the parties ever fully met upon the contract as contained in the paper-writing sought to be avoided. *Furst v. Merritt, ante,* p. 404.

Speaking to the sufficiency of a similar state of facts to avoid a contract, in *Whitehurst v. Ins. Co.,* 149 N. C., p. 276, *Hoke, J.,* said: "It is well recognized with us that, under certain conditions and circumstances, if a party to a bargain avers the existence of a material fact recklessly, or affirms its existence positively, when he is consciously ignorant whether it be true or false, he may be held responsible for a

39—190

falsehood; and this doctrine is especially applicable when the parties to a bargain are not upon equal terms with reference to the representation, the one, for instance, being under a duty to investigate, and in a position to know the truth, and the other relying and having reasonable ground to rely upon the statements as importing verity," citing authorities for the position.

To like effect are the decisions in *Machine Co. v. Feezer,* 152 N. C., 516, *Jones v. Ins. Co.,* 151 N. C., 53, *May v. Loomis,* 140 N. C., 358, and many others in our reports.

And as to responsibility attaching for such statements, when the parties are not on equal terms in reference to them, it is said in Smith on Fraud, sec. 3: "The false representation of a fact which materially affects the value of the contract and which is peculiarly within the knowledge of the person making it, and in respect to which the other party, in the exercise of proper vigilance, had not an equal opportunity of ascertaining the truth, is fraudulent. Thus representations made by a vendor to a purchaser of matters within his own peculiar knowledge, whereby the purchaser is injured, is a fraud which is actionable. Where facts are not equally known to both sides a statement of opinion by one who knows the facts best involves very often a statement of a material fact, for he, impliedly, states that he knows facts which justify his opinion."

The misrepresentations alleged to have been made and relied upon in the instant case are no more promissory in character than the one held to be sufficient to avoid the contract in *Caldwell v. Ins. Co.,* 140 N. C., 100. There, a colored woman, who could neither read nor write, was induced to take out a policy of life insurance, upon the representation of the defendant's agent, falsely and fraudulently made, as was found by the jury, that she could "draw out her claim" at the end of 10 years. And to like effect are the parallel cases of *Stroud v. Ins. Co.,* 148 N. C., 54, and *Sykes v. Ins. Co., ibid.,* 13.

In an action between the original parties to an instrument, as here, if it be made to appear that one induced the other to execute the paper-writing upon his representation as to its contents, and the representation turns out to be untrue and fraudulently made, the party who relied upon it, to his injury, if he acted with reasonable prudence in the matter, is not bound to him who deceived him into executing the instrument. *Furst v. Merritt, ante,* 403.

The defendant relies upon the cases of *Pittman v. Tob. Gro. Asso.,* 187 N. C., 340, and *Kansas Wheat Gro. Asso. v. Floyd,* 227 Pac., 336, but in both of those cases the parties could read and write and each knew what was in his contract. They are, therefore, distinguishable from the case at bar.

We refrain from any discussion of the evidence, as the defendant has not yet been heard. The motion for judgment as of nonsuit was allowed at the close of plaintiff's evidence.

There is also an exception appearing on the record addressed to the refusal of the court to remand the case to Surry County for trial. The denial of this motion cannot be held for error. *Cline v. Mfg. Co.,* 116 N. C., 837.

At the August Term, 1924, of Surry Superior Court, on motion of the defendant, a number of cases of like character, including the present one, were ordered removed to Alleghany County for trial, it being asserted in affidavits, filed for the purpose, that the defendant could not obtain a fair trial in Surry County. Two terms of court intervened in Alleghany County before the papers were actually transferred. No motion was made in either county, because of this delay, until the case was called for trial at the July Special Term, 1925, of Alleghany.

In *Fisher v. Mining Co.,* 105 N. C., 123, it was said that if, after obtaining an order for the removal of a cause to another county for trial, the party obtaining the order does not docket the transcript in the county to which it is removed at the next succeeding term of court, regularly scheduled to be held therein, the Superior Court of the county from which it has been ordered to be removed may, at the first term held thereafter, upon proof of such failure, strike out the order of removal. This is in analogy to an appeal to this Court in which, if the transcript is not docketed here at the proper time and no *certiorari* is allowed, the court below, on proof of such facts, may, on proper notice, adjudge that the appeal has been abandoned, and proceed in the cause as if no appeal had been taken. *Jordan v. Simmons,* 175 N. C., p. 540; *Avery v. Pritchard,* 93 N. C., 266.

The judgment of nonsuit will be reversed and the cause remanded for another hearing.

New trial.