ALLIE A. CROMWELL v. CARL M. LOGAN AND RALPH BEACHAM, AND
CARL M. LOGAN AND RALPH BEACHAM v. WALNUT MERCANTILE
COMPANY, AND C. B. MASHBURN, RECEIVER, AND MRS. ALLIE A.
CROMWELL.

(Filed 23 January, 1929.)

**1. Trial—Taking Case or Question From Jury—Nonsuit.**

Upon motion of nonsuit all the evidence, whether offered by the plaintiff or elicited from the defendant's witnesses, will be considered in the light most favorable to the plaintiff, giving him every reasonable intendment thereupon and every reasonable inference to be drawn therefrom.

**2. Fraud—Right of Action and Defenses—Duty to Read Instrument.**

A person who can read and is capable of understanding an instrument is generally required to read a paper before signing it unless he is induced not to do so by positive fraud or false representations made by the other party and relied on by him.

**3. Same—Ratification—Deeds—Nonsuit.**

Where there is evidence tending to show that the plaintiffs were business men of intelligence and that they had an opportunity to read a deed in which was an agreement to assume personal liability for a debt as a part of the purchase price of lands, but that they signed the instrument without reading it because they assumed that it was drawn in accordance with a previous agreement, with further evidence that the defendants said nothing and did nothing to prevent the plaintiffs from reading the deed, and that after discovery of the error the plaintiffs ratified the fraud by attempting to settle the debts so assumed by personal notes, etc.: *Held*, the plaintiffs are not entitled to recover, and a judgment as of nonsuit should have been allowed.

APPEAL by Mrs. Allie A. Cromwell from *Moore, J.*, and a jury, at March Term, 1928, of MADISON. Reversed.

Allie A. Cromwell, on 13 August, 1927, instituted this action against Carl M. Logan and Ralph Beacham, in the Superior Court of Buncombe County, N. C., to recover on the following note alleged to have been assumed by them, viz.:

"$4,000.00.                    Asheville, N. C., 12 December, 1925.

On or before one year after date without grace, for value received, we, or either of us, promise to pay to the order of Allie A. Cromwell, Four Thousand and No/100 Dollars, with interest after date until paid. The drawers and endorsers severally waive presentment for payment, protest and notice of protest and nonpayment of this note, and all defenses on the ground of any extension of the time of its payment that may be given by the holder or holders to them or either of them.

Due 12 Dec., 1926.                    GRACE S. LOOK.  (Seal.)
No. 1."

(1) The note was secured by deed of trust of even date made by Grace S. Lock (widow) to Guy Weaver, trustee for Allie A. Cromwell, which was duly recorded in the office of the register of deeds in Madison County, N. C., where the land was situate.

(2) Grace S. Lock on 5 February, 1926, after executing the above deed in trust conveyed the land to the Walnut Mercantile Company, a corporation. This deed was duly recorded in Madison County, N. C., and the said Walnut Mercantile Company assumed and agreed to pay said note of $4,000 to Allie A. Cromwell.

(3) The Walnut Mercantile Company, on 7 September, 1926, conveyed said land to Carl M. Logan and Ralph Beacham. This deed was duly recorded in Madison County, N. C. The agreement in the deed is as follows: "That said lands and premises are free from any and all encumbrances excepting a balance of about $14,000 on deed of trust originally for $15,000, payable to S. R. Freeborn, second deed of trust for $4,000 to Allie A. Cromwell; and taxes for the year 1926, all of which obligations are assumed by the grantees as a part of the purchase price." Thereafter Carl M. Logan and Ralph Beacham conveyed said land back to the Walnut Mercantile Company with like assumption of debts.

Carl M. Logan and Ralph Beacham set up as a defense: (1) Actionable fraud; (2) mutual mistake in respect to their assumption of the Allie A. Cromwell note.

Carl M. Logan and Ralph Beacham subsequently instituted an action against the Walnut Mercantile Company, a corporation, and C. B. Mashburn, receiver of the Walnut-Mercantile Company, in the Superior Court of Madison County, N. C., praying that the above provision in regard to their assumption of the plaintiff's note be set aside (1) for actionable fraud, (2) mutual mistake.

By consent the actions were consolidated and tried together in Madison County, N. C., and the plaintiff, Allie A. Cromwell, in this action, was made a party defendant to the latter action brought by Logan and Beacham. Several issues were submitted to the jury, the only one answered and now material to be considered is the first:

"Was the provision in the deed by the Walnut Mercantile Company to Carl M. Logan and Ralph Beacham, whereby they agreed to assume and pay a debt of $4,000 to Allie A. Cromwell, and a balance of about $14,000, inserted therein fraudulently and wrongfully and without the knowledge and consent of said Logan and Beacham? Answer: Yes."

The defendants, Carl M. Logan and Ralph Beacham, contended that there was an original contract made between them and the Walnut Mercantile Company, which was lost, which did not contain the personal assumption clause of the debts. That Edward Lock was secretary of the Walnut Mercantile Company, and he stated that if we traded for

the stock of merchandise "We would not be in any way personally liable for the debts of the corporation."

Carl M. Logan testified: "About a week later we went back to Walnut and saw Mr. Lock again. We went over the stock of goods carefully, and Mr. Lock said the company owed $5,700 on stock of goods on open account, $2,400 to Citizens Bank of Marshall, $1,500 on the store fixtures, and $18,000 on the store building and grounds, the latter being secured by deeds of trust thereon. He said he would transfer to us the corporation and we would not be personally liable for any of this indebtedness. He said, however, that it would be necessary in conveying the real estate for the corporation to make a deed to myself and Beacham personally, as that was the only way a corporation could convey real estate. I did not know anything about corporations, and relied on that statement of Mr. Lock. . . . A few days later we met at the attorney's office to close the contract. When Mr. Beacham and I arrived Mr. and Mrs. Lock were there and the attorney. We did not employ the attorney; he represented the Locks. We did not have any lawyer. When we entered, Mr. and Mrs. Lock were signing the certificates of stock. When through, they laid the stock and a deed on the table. We delivered to them the deed we had had prepared for the lots in Sunburst Mountains, Inc., and Mr. and Mrs. Lock then left the office. *We had not read the deed nor the certificate of stock. I supposed they had prepared it according to the contract.* I had not instructed the attorney or any one else to insert in the deed that we would personally assume and agree to pay the debts of the corporation. After the Locks left, we told the attorney we wanted to elect officers for the corporation. *He asked if we wanted to convey the property back to the corporation. We told him we did, and asked him to prepare the deed.* He prepared the deed, and we properly executed it, and *about ten days later registered them at Marshall.* The deeds were in the attorney's office until the day we took them to Marshall. It was several months afterwards before I learned that the clause concerning the personal assumption of the debts of the corporation had been inserted in the deed. We were trying to trade the property to some people, and went to the attorney's office in regard to it, when he mentioned to us that according to the deed we were personally liable for the debts of the corporation. We asked the attorney why that was put in the deed, and he said they just put one over on us." On cross-examination he testified: "*I was about thirty years old when I received deed from Walnut Mercantile Company. Have high school education. Have traded a good deal. Have been in the real estate business for some time. I own considerable property. I consider myself an intelligent business man.* Received deed in Asheville and registered it in Marshall. Registered deed about 10 days after we closed deal. Beacham

CROMWELL *v.* LOGAN AND LOGAN *v.* MERCANTILE CO.

and I went to Marshall together when we registered deed. Could not read deed while I was driving automobile to Marshall. Cannot remember salary I was getting after I took charge of corporation. *No one prevented us from reading the deed. Nothing was said by Lock or any one else to prevent us from reading deed.* The attorney is a man of good character. *Paid Wilkins to release us from the first mortgage assumed in the deed.* Wrote Mrs. Cromwell the following letter:

'Asheville, N. C., 28 September, 1926.

Mrs. Allie A. Cromwell,
522 W. 27th Street, Norfolk, Va.

DEAR MADAM: Ralph Beacham and I have bought out the Walnut Mercantile Company, and find you hold a second mortgage of $4,000 against the building, due February, 1926. When we bought the business it was in pretty bad shape, and we are getting it straight as fast as possible. We are going to pay it out. *We would like to get you to extend your note one year, and we will start paying you $50 and interest each month, for one year, and then pay all the balance December, 1927.* We will appreciate it very much if you will do this, and we will be prompt with our payments.              Yours very truly,

CARL M. LOGAN.

P. S.—Please let us hear from you.'

The business was a cash business. Went on the rocks after we took charge."

The testimony of Ralph Beacham was to like effect: "I saw the written contract between us and the Walnut Mercantile Company. Mr. Gasque had it. I read it carefully. It did not provide that we were to assume the debts of the corporation. The contract stated that we were to convey our twenty-seven lots in subdivision known as Sunburst Mountains, Inc., in Haywood County, for the stock of the Walnut Mercantile Company, of a stock of goods and store building at Walnut, N. C. It also set out the amount of indebtedness against the Walnut Mercantile Company. It did not say anything about us assuming the debts of the corporation. We were in the attorney's office some time after our trade was closed in regard to another transaction, and the attorney said to us that the Locks had put one over on us. Lock afterwards tried to trade with us for the Walnut Mercantile Company. He saw us several times about it. He always said, 'If we trade all you will have to do is just transfer the stock to us.' "

On cross-examination: *"I am a business man. Have traveled for Armour & Company about eight years.* Don't know whether the $4,000 mortgage was part of purchase price or not. Paid Gasque $900. Have

CROMWELL *v.* LOGAN AND LOGAN *v.* MERCANTILE CO.

had several transactions in real estate. Logan and I went through the real estate in Asheville and were not hurt. We were in the real estate business together. All land we conveyed to Lock, twenty-seven lots in Sunburst Mountains, Inc., in Haywood County, rough and steep. It included right to hunt and fish over 3,500 acres of land. Don't know exactly how much, perhaps between four and five acres, represented to Locks as real estate development. Showed them a map with property laid off as in lots. Represented to Locks as being worth between $8,000 and $9,000. Allowed salaries from corporation to myself $150 per month. I worked every other day. Logan $150 per month. He worked every other day. Mr. Price $135 per month. Lawson and wife $175 per month. Came with Logan to Marshall and we registered the deed containing assumption clause. *Knew about the letter Logan wrote Mrs. Cromwell.* Don't remember asking attorney how to avoid personal liability. *No one prevented us from reading deed.* Had charge of corporation for about fifteen months. Operated on cash basis. Went on rocks after we took charge. *The attorney made no representations. The attorney is a man of good character."*

The attorney, Edward Lock and Mrs. Lock, his mother, all testified that it was well understood that Carl M. Logan and Ralph Beacham were to, and did, become personally responsible. That the original contract had this agreement and the assumption was put in the deeds with full knowledge and in accordance with agreement. That nothing was done to prevent Logan and Beacham from reading the deeds.

Allie A. Cromwell testified: "Received letter from Logan. That is the letter (same letter was introduced as appears in cross-examination of Logan, the letter head being as follows: 'Carl M. Logan, Builder and Real Estate'). *Borrowed money to come down here and settle with Logan. He tried to give me a lot in West Asheville for my mortgage.* He showed me two lots and said that there was a mortgage against each of them—a house on one of them. *Logan said, 'I know I will have to pay you, but I can't now.'* I said, *'I'm a widow, Mr. Logan; give me my money and let me go back home.' ".*

On cross-examination: "Nothing was said about taking notes as a compromise. I did not understand it that way. Lock did not tell me that my mortgage would be a first mortgage."

Carl M. Logan testified: *"I offered notes to Mrs. Cromwell as a compromise.* Notes secured by real estate in West Asheville. Notes ran over period of twenty years. I did not want to go to court. I did not sign the contract with any addition to it that Mrs. Lock says was added to it."

At the close of Logan's and Beacham's evidence, treated as plaintiffs in this action, and at the close of all the evidence, Allie A. Cromwell,

as defendant in case against her of Logan and Beacham, moved for judg-
ment as in case of nonsuit.  C. S., 567.  The court below denied the
motion.  Allie A. Cromwell excepted, assigned error and appealed to
the Supreme Court.

· *Roberts, Young & Lane for Carl M. Logan and Ralph Beacham.*
   *Claude L. Love, Oscar Stanton and Geo. M. Pritchard for Allie A.
Cromwell.*

CLARKSON, J.  It is the well settled rule of practice and the accepted
position in this jurisdiction that, on a motion to nonsuit, the evidence
which makes for the plaintiff's claim, and which tends to support her
cause of action, whether offered by the plaintiff or elicited from the
defendant's witnesses, will be taken and considered in its most favorable
light for the plaintiff, and she is "entitled to the benefit of every reason-
able intendment upon the evidence and every reasonable inference to be
drawn therefrom."  *Nash v. Royster,* 189 N. C., at p. 410.

The jury only passed on the issue of actionable fraud, and we will
consider alone this aspect.  Was there sufficient evidence to be submitted
to the jury?  We think not.

Speaking to the subject of actionable fraud, in *Leonard v. Power Co.,*
155 N. C., at p. 17, it is said: "It is true that a person who can do so is
generally required to read a paper before signing it, and his failure to
do so is negligence for which the law affords no redress.  This rule does
not apply, however, in case of positive fraud or false representation
made by another party, by which the person signing the paper is lulled
into security or thrown off his guard and prevented from reading it,
and induced to rely upon such false representations or fraud."  *Taylor v.
Edmunds,* 176 N. C., 328; *Oil and·Grease Co. v. Averett,* 192 N. C.,
465; *Butler v. Fertilizer Works,* 193 N. C., 632.

We think the law above stated is well settled in this jurisdiction, but
the facts in this case do not come within the principle above set forth.
We think the law applicable as stated in *Forbes v. Mill Co.,* 195 N. C.,
at p. 54-5, quoting from *Colt v. Kimball,* 190 N. C., at p. 172-3,
*Varser, J.,* speaking for the Court, citing a wealth of authorities, said:
" 'Defendant's testimony shows that he is a man of education and promi-
nence, accustomed to the transaction of business, and of much experience,
with more than an average education, who has served on the board of
education for Vance County for many years.  It was his duty, unless
fraudulently prevented therefrom, to read the contract, or, in case he
was not able to read the fine print without stronger glasses, to have it
read to him.  This rule does not tend to impeach that valuable principle
which commands us to treat each other as of good character, but rather

38—196

enforces along with it the salutary principle that each one must 'mind his own business' and exercise due diligence to know what he is doing. Having executed the contract, and no fraud appearing in the procurement of the execution, the Court is without power to relieve the defendant on the ground that he thought it contained provisions which it does not. He is concluded thereby to the same extent as if he had known what due diligence would have informed him of, to wit, its plain provisions that the agent had no authority to make agreements other than those contained therein, and that such agreements, if made, were not a part of the contract.' *Furst v. Merritt,* 190 N. C., 397; *Dunbar v. Growers,* 190 N. C., 608; *Hoggard v. Brown,* 192 N. C., 494; *Finance Co. v. McGaskill,* 192 N. C., 557." See *Peyton v. Griffin,* 195 N. C., 685.

In *Abel v. Dworsky,* 195 N. C., p. 868, it is said: "There was other evidence tending to show ratification. If plaintiffs discovered the fraud and ratified the sale, they cannot now recover in this action. 12 R. C. L., p. 412; *Darden v. Baker,* 193 N. C., 386." *Sugg v. Credit Corp., ante,* page 97.

"One who has assumed or contracted for the payment of another's debt may be sued directly by the creditor." *Glass Co. v. Fidelity Co.,* 193 N. C., at p. 772.

Carl M. Logan and Ralph Beacham were men of education and intelligent business men and in the real estate business together. Both testified that nothing was said at the time to prevent them from reading the deeds. (1) A deed was made to them by the Walnut Mercantile Company with the assumption of Allie A. Cromwell's note. (2) After they had purchased the stock they then made a deed back to the Walnut Mercantile Company with the assumption of Allie A. Cromwell's note. They took both deeds to Marshall, N. C., and recorded them about ten days after the deal was made. The deeds were dated 7 September, 1926. The stock of merchandise was in the building that Allie A. Cromwell had a second lien on. They ran the business about fifteen months. They purchased the business 7 September, 1926, and this $4,000 note was due 12 December, 1926, and the deed of trust could have been foreclosed at that time. 28 September, 1926, Carl M. Logan wrote Allie A. Cromwell (Ralph Beacham testified, "I knew about the letter Logan wrote Mrs. Cromwell") : "We would like to get you to extend your note one year, and we will start paying you $50 and interest each month for one year, and then pay all the balance December, 1927." Ralph Beacham testified, "The attorney made no representations. The attorney is a man of good character." Other indicia of negligence and ratification: (1) By raising no question as to the personal liability until they were sued in the courts, and in the meantime having the deeds showing the assumption of Allie A. Cromwell's debt. (2) By defendant Logan obtaining from one

CROMWELL *v.* LOGAN AND LOGAN *v.* MERCANTILE CO.

Wilkins at personal cost to him, a release from the first mortgage against the real estate, which amounted to $14,000. (3) By attempting to pay the $4,000 note by the transfer and delivery to Allie A. Cromwell of certain promissory notes, payable over a period of twenty years, which were the personal property of the defendant, Logan, and in which the Walnut Mercantile Company had no interest whatsoever.

On the entire record we think there is no sufficient evidence to sustain the verdict, and the motion for judgment as in case of nonsuit should have been granted. For the reasons given the judgment is

Reversed.