The plaintiff instituted an action against the defendants, F. H. Bierman and wife, to recover $600 evidenced by three promissory notes. The defendants, Bierman and wife, filed a petition asking that the other defendants be made parties to the suit. This was done. Thereupon the Biermans filed an answer admitting the execution of the notes held by the plaintiff and setting up a cross-action against the other defendants. The cross-action of Bierman and wife against their codefendants is founded in substance upon the following facts: Bierman and wife owned a lot in Mecklenburg County on Hutchison Avenue, sometimes referred to as the Derita Road property. The defendant, Lex Marsh, and H. J. Anthony owned a piece of property in Mecklenburg County known as the North Brevard Street property. The defendant, McKee, was a real estate agent in Charlotte, who approached the Biermans and inquired if they would be interested in trading or exchanging the Hutchison Avenue property for the Brevard Street property. Thereafter Bierman looked over the Brevard Street property owned by Lex Marsh, and, after examining the property, notified the defendant, McKee, that he was interested and requested McKee to come to see him about the trade.
On 6 September, 1928, all of the defendants entered into a written contract stipulating "that Bierman and wife were to convey to Lex Marsh Company, their executors or assigns a lot of land fronting on Derita Road. . . . Lex Marsh Company, their executors or assigns, agree to take title to the above mentioned property, subject to $12,000, payable $2,000 per year over a period of six years." Lex Marsh Company agreed to convey to Bierman and wife the North Brevard Street property, and F. H. Bierman and wife, Mabel B. Bierman, agreed "to assume and execute a total mortgage of $20,000, and agree to pay together with interest from date of transfer of the property."
Thereafter on 18 September, 1928, Bierman and wife executed a warranty deed to the defendant, G. L. Bryson, conveying the Derita Road property in which said deed it is provided: "This conveyance is made subject to the indebtedness represented by said deed of trust in *Page 277 
the amount of $12,102." On the same day Lex Marsh and Anthony conveyed to Bierman and wife the Brevard Street property by a warranty deed, which said deed contains the following stipulations in the warranty clause: "Except for that certain deed of trust to E. J. Caffrey, trustee for the Mechanics Perpetual Building and Loan Association, recorded in Book ......, at page ......, of the Mecklenburg registry, securing a loan in the gross amount of $12,000, on which there is a balance of $11,550, which balance the parties of the second part hereby assume and agree to pay."
The final result of these transactions was that Bryson, Bierman's grantee, received Bierman's property subject to a mortgage or deed of trust of $12,102, whereas Bierman received the Brevard Street property and agreed to assume and pay off a mortgage or deed of trust of $11,550 thereon.
Bierman and his wife allege that the other defendants played a trick on them or defrauded them by reason of the fact that McKee, the real estate agent, gave them to understand that each party to the transaction was to assume and pay the indebtedness of the other, whereas, in fact, Bierman assumed the payment of the mortgage on the Brevard Street property, while Bryson purchased Bierman's property subject to a mortgage, thereby incurring no personal liability. Bierman testified that he completed the tenth grade in school and "at that time that was considered a pretty good education." He further testified that when the defendant, McKee, brought him the contract "I did not sign it . . . because I wanted to look it over, examine it, and see if it was in accordance with the terms I had talked over with him. I read it and the same language is in it now as was in it when I read it. I did not read it over while McKee was in my office, but did read it over sometime within a day or two after I got it. I read it over to my wife, and she is a woman of similar education to mine. I discussed the contract with her. I read the deeds made pursuant to that contract and checked them over to see whether they conformed with the terms of the contract, and found they did." He further testified that he examined the Brevard Street property thoroughly and "after my investigation I thought the trade I was getting was a better proposition than the one I had. I called McKee in a day or two and told him I would like to see him and would be interested in making a trade. He came to see me. I told him I had made an inspection of the property and that I was interested. I told him that I would be interested in the proposition and to go to Lex Marsh and get his proposition. The proposition came to me from Lex Marsh Company. In a few days McKee came back to me and brought a proposition from Lex Marsh Company. . . . Mr. McKee was very much *Page 278 
interested in getting me to sign the contract, but I did not sign it that day. I wanted time to read it over, study it, and talk it over with my wife, and did that. Then both of us signed it. I took it up with my wife and signed it, and two or three days later called Mr. McKee and asked him to come down in reference to it." There was further testimony that Bierman first discovered the difference between buying property subject to a debt and assuming and agreeing to pay the debt in November, 1928. There was further evidence that on 6 February, 1929, after Bierman had made complaint, that Bryson reconveyed the Derita Road property back to him in exactly the same condition and subject to the same encumbrance originally existing, and that Bierman reconveyed to the Lex Marsh Company the Brevard Street property. There is some controversy as to whether Bierman paid out anything on either project.
There was no controversy with respect to the right of plaintiff to recover $600 on the notes held by him as the jury found he was an innocent purchaser for value.
The issues upon the cross-action are as follows:
1. "Did the defendants, Lex Marsh, Jr., Lex Marsh Company, G. L. Bryson and H. L. McKee, or either of them, fraudulently induce F. H. Bierman and wife, Mabel B. Bierman, to enter into contract, whereby F. H. Bierman and wife conveyed certain real estate on Derita Road to Lex Marsh Company or its assigns, subject to indebtedness of $12,102.68, as alleged in the cross-complaint of F. H. Bierman and wife, Mabel B. Bierman?"
2. "Did the defendants, Lex Marsh, Jr., Lex Marsh Company, G. L. Bryson and H. L. McKee, or either of them, fraudulently induce F. H. Bierman and wife to enter into a contract whereby Lex Marsh, Jr., and others conveyed to F. H. Bierman and wife, Mabel B. Bierman, certain real estate on Brevard Street, on which real estate F. H. Bierman and wife assumed and agreed to pay mortgage indebtedness of $20,000?"
3. "Have defendants, F. H. Bierman and wife, Mabel B. Bierman, been damaged by the fraud of said defendants?"
4. "What actual damages, if any, are the defendants, F. H. Bierman and wife entitled to recover?"
5. "What punitive damages, if any, are defendants, F. H. Bierman and wife, entitled to recover?"
The jury answered the first issue "Yes," the second issue "Yes," the third issue "Yes," the fourth issue "$1,600," and the fifth issue "None."
From judgment upon the verdict the defendants, Lex Marsh Company, Lex Marsh, Jr., Bryson and McKee, appealed. *Page 279 
The defendants in the cross-action instituted by Bierman, assert that there was no competent evidence of fraud or conspiracy, and that the cross-action should have been nonsuited upon motion duly made. The difference in the liability imposed arising from the purchase of property "subject to a debt" and that arising when a purchaser "assumes and agrees to pay a debt" is defined and applied in Keller v. Parrish, 196 N.C. 733,147 S.E. 9; Harvey v. Knitting Co., 197 N.C. 177, 148 S.E. 45. It is obvious from the evidence that Bierman did not understand the difference between these two legal terms or the degree of liability imposed thereby, but he was an intelligent man and signed the contracts of exchange and executed the deed for his own property after full study, investigation and deliberation.
Decisions of courts and works of approved textwriters agree that, when a party of full age executes and delivers a written contract, all prior verbal negotiations are merged in the written instrument in the absence of fraud, mistake or other maintainable equity. Moreover, in such cases the law assumes that the parties have deliberately chosen words fit and suitable to express the intent and meaning of the transaction. The general aspects of the law upon the pertinent facts are stated in Conservatory v.Dickenson, 158 N.C. 207, 73 S.E. 990; Forbes v. Knitting Mill, 195 N.C. 51,141 S.E. 352; Cromwell v. Logan, 196 N.C. 588, 146 S.E. 233;Elam v. Realty Co., 182 N.C. 599, 109 S.E. 632; Burton v. InsuranceCo., 198 N.C. 498, 152 S.E. 396.
Applying the rules of law to the facts, the Court is of the opinion that the motion for nonsuit upon the cross-action should have been granted.
Reversed.