Turner v. Weber

———

HERBERT LOGAN TURNER I, PLAINTIFF v. FRANK J. WEBER, DEFENDANT

— AND —

HERBERT LOGAN TURNER II, ADDITIONAL DEFENDANT

No. 7228DC735

(Filed 22 November 1972)

1. Ejectment § 8— action to recover possession of realty — failure to file defense bond — affidavits in lieu of bond

In an action to recover possession of real property, contention that judgment should have been rendered for plaintiff because defendant failed to file the defense bond required by G.S. 1-111 is untenable where defendant filed answer on 28 January, plaintiff called the court's attention to defendant's failure to file the bond on 2 February, and defendant filed the affidavits permitted by G.S. 1-112 in lieu of bond on 7 February.

2. Ejectment § 1; Landlord and Tenant § 3— estoppel of tenant to deny landlord's title — title allegedly obtained by fraud from tenant

A tenant in possession is not estopped to deny his landlord's title when that title was allegedly obtained by fraud from the tenant in possession.

3. Cancellation of Instruments § 2— signature by grantor who can read and write — showing of fraud

The mere fact that a grantor who can read and write signs a deed does not preclude him from showing, as between the grantee and

Turner v. Weber

himself, that he was induced to sign by fraud on the part of the grantee, or that he was deceived and thrown off guard by the grantee's false statements and assurances designedly made at the time and reasonably relied on by him.

APPEAL by plaintiff from *Winner, District Judge,* 3 April 1972 Session of District Court held in BUNCOMBE County.

Action in summary ejectment. The action was tried by the court without a jury.

Plaintiff's evidence tended to show that on or about 20 September 1971 a sale contract was executed wherein defendant Weber agreed to sell and plaintiff agreed to buy seven-tenths of one acre contained within a tract of 9.5 acres owned by defendant. Plaintiff testified that this land was to be conveyed to his son, defendant Turner II. This contract of sale called for a payment of $600.00 at the time of execution with the balance of $650.00 to be paid at the closing. On the same day, plaintiff made a loan of $600.00 to defendant Weber and required Weber to execute a deed of trust, identified as D-6 in the record, for the entire 9.5 acres in order to secure this note. The following day, on or about 21 September 1971, a paper writing purporting to be a sale contract, identified as P-A in the record on appeal, was executed wherein Weber agreed to sell and plaintiff agreed to buy the 9.5 acres owned by defendant, less the seven-tenths acre described in the sale contract dated 20 September 1971. This contract called for plaintiff to pay $2,000.00 into escrow, $6,000.00 at the closing and assume approximately $17,100.00 in existing mortgages on the land. Plaintiff's evidence tended to show that on 29 October 1971 defendant executed a deed, identified as Exhibit P-B, for the entire tract of 9.5 acres to plaintiff. Plaintiff then alleges that on 1 November 1971 defendant executed a deed to plaintiff for the seven-tenths of an acre which defendant had deeded as part of the tract of 9.5 acres on 29 October. Plaintiff testified that on 21 January 1972, he asked defendant to vacate the property on the grounds that the terms of the purported sales agreement called for defendant to vacate on or before 15 January 1972. Other terms of that same sales agreement call for defendant to make installment payments on the existing mortgages for the months of October, November and December 1971, inclusive, in lieu of rent. Plaintiff testified that he paid mortgage installments for January, February and March 1972, inclusive. This suit was instituted on 26 January 1972.

Defendant Weber's evidence tended to show that sometime in August 1971, defendant and plaintiff negotiated for the sale and purchase of seven-tenths of an acre of land, part of a tract of 9.5 acres owned by defendant. On or about 20 September 1971 defendant signed a sales contract, identified as D-I in the record on appeal, in which he agreed to sell seven-tenths of an acre to plaintiff for $1,250.00. At the time of this signing, defendant was presented with a stack of sheets of paper which plaintiff represented to be the original contract of sale and copies. Defendant read the top sheet and signed it and all sheets under it, relying upon the representation made by plaintiff.

Defendant also testified that he executed a deed of trust, identified as D-6, for the entire 9.5 acres in order to secure the sum of $600.00 (the amount of plaintiff's down payment made on the purchase of the seven-tenths acre tract). This security was required in the event defendant would be unable to obtain releases to deeds of trust held by other parties on the entire tract of 9.5 acres. Defendant testified that no other documents were executed on or about 20 September or 21 September 1971 and there was no agreement at any time to sell the tract of 9.5 acres to plaintiff. The $650.00 balance of the purchase price for the seven-tenths acre was paid by plaintiff within a month. Shortly thereafter, either at the end of October or the beginning of November 1971, defendant obtained a loan of $600.00 from plaintiff and executed what was represented by plaintiff to be a deed of trust on the entire 9.5 acres to secure the loan. Once again, plaintiff presented a stack of papers to defendant, representing them to be an original deed of trust and copies of that deed of trust. Defendant read the deed of trust which was the top sheet and, relying upon the representation of plaintiff, signed all copies in the stack. On or about 1 November 1971, defendant executed a deed to plaintiff's son for the seven-tenths acre of land as agreed in the sale contract dated 20 September. In January 1972, defendant tendered a cashier's check for $620.00 to plaintiff to repay the loan defendant believed to be secured by a deed of trust executed either in late October or early November 1971. Plaintiff refused to accept the check. Subsequently, defendant discovered that a deed purporting to convey defendant's 9.5 acres to plaintiff had been recorded and he sought legal counsel.

In a judgment entered 7 April 1972, the court made the following findings of fact, among others:

"3. That at the time of the signing of the agreement D-I, there were numerous carbon copies signed; that the defendant read the original but did not read the copies; that the copies were in a stack of sheets of paper and that the plaintiff represented to the defendant that all of the sheets of paper were copies of D-I; that the defendant relied upon this representation and signed all of the copies; that among the copies was Exhibit P-A, and that the defendant did not know the contents of Exhibit P-A when he signed it, having relied upon the plaintiff.

\*          \*          \*

5. That the defendant never knew the contents of Exhibit P-A until sometime after the filing of this lawsuit.

6. That at the time of the signing of the said contract D-I, a deed of trust was signed by the defendant to secure the down payment made by the plaintiff for the seventenths (sic) of an acre, in case the defendant would be unable to obtain releases to certain deeds of trust on the whole property held by other parties; that the said deed of trust was introduced as Exhibit D-6, and all of the terms of the said deed of trust are hereby made a part of these findings of fact.

7. That sometime at the end of the month of October, 1971, or at the beginning of November, 1971, the defendant asked the plaintiff to loan him the sum of six hundred dollars ($600.00) ; that the plaintiff agreed to do this, requiring another deed of trust on the whole nine-and-a-half acre tract to secure the loan; that the defendant signed what was represented to him by the plaintiff as being another deed of trust, but what in actuality was the deed introduced as Exhibit P-B; that at the time of the signing of P-B, there was another sheet attached, which sheet looked like the front of a form deed of trust and looked like the deed of trust that the defendant had previously signed and which was introduced as D-6; that the plaintiff told the defendant that he was signing a deed of trust and that he was in a hurry; that the defendant relied upon the representations of the plaintiff and signed the instrument without reading it; that he did not know that he had deeded his whole property away until sometime in January, 1972.

\*          \*          \*

9. That under the conditions of all of these transactions, a reasonably prudent man would not have read the copies attached to D-I before signing them, nor would a reasonably prudent man under the conditions at the time have read P-B before signing it. . . .

10. That the defendant has tendered to the plaintiff the sum of six hundred dollars ($600.00) plus interest to repay the loan of six hundred dollars ($600.00) above mentioned, but that the said tender was refused by the plaintiff.

\* \* \*

14. That the defendant was damaged by his reliance upon the misrepresentations of the plaintiff, in that he has lost record title to the above mentioned nine-and-a-half acre tract of real estate."

The court concluded as a matter of law that defendant was not estopped from raising the defense of a fraudulent procurement of the property in question and that " . . . plaintiff made material misrepresentations of subsisting facts, with the knowledge of the falsity of the said misrepresentations and with a fraudulent intent that as to the signing of the deed marked Exhibit P-B and the contract marked Exhibit P-A, the defendant reasonably relied upon the plaintiff's representations and that he reasonably signed Exhibit P-B and P-A without reading them, due to the use of artifice by the plaintiff. . . . "

The court then ordered that plaintiff's action be dismissed, the sales contract and deed for the tract of 9.5 acres were declared null and void and defendant was ordered to pay $600.00 plus interest from the date of judgment to the plaintiff as repayment of the loan made in late October or early November.

*S. Thomas Walton for plaintiff appellant.*

*Hendon & Carson by James Cary Rowe for defendant appellee.*

VAUGHN, Judge.

[1] We first consider plaintiff's challenges to the overruling of his motions for summary judgment and judgment on the pleadings under Rule 12 (c) as raised by his second, third and twenty-third assignments of error. Plaintiff contends that

defendant Weber should not have been allowed to plead because of an alleged failure to comply with the requirements of G.S. 1-111 and that Weber was estopped to plead fraud because of the relationship of landlord and tenant existing between plaintiff and Weber. G.S. 1-111 provides that in all actions for the recovery or possession of real property, the defendant, before being permitted to plead, must execute and file a security bond in an amount fixed by the court, but not less than $200.00. G.S. 1-112 provides that the undertaking prescribed in G.S. 1-111 is not necessary if an authorized attorney certifies in writing that he has examined defendant's case and is of the opinion that the plaintiff is not entitled to recover and if defendant files an affidavit stating he is unable to give and is not worth the amount of the undertaking. Here, defendant Weber filed answer on 28 January 1972, plaintiff called the court's attention to noncompliance with G.S. 1-111 on 2 February 1972 and the affidavits permitted by G.S. 1-112 were filed on 7 February 1972. There was no prejudicial error in this procedure. *Cooper v. Warlick*, 109 N.C. 672, 14 S.E. 106; *McMillan v. Baker*, 92 N.C. 111.

[2] The general rule denies a tenant in possession any right to challenge his landlord's title to the property. *King v. Murray*, 28 N.C. 62. Even if it could be assumed that the sales agreement and deed to the tract of 9.5 acres did create a relationship of landlord and tenant between plaintiff and defendant Weber, an exception to the general rule permits a tenant in possession to challenge his landlord's title when that title was allegedly obtained by fraud from the tenant in possession. *Lawrence v. Eller*, 169 N.C. 211, 85 S.E. 291; *Insurance Co. v. Totten*, 203 N.C. 431, 166 S.E. 316. The estoppel created by application of the general rule extends only to prohibit the denial of what has already been admitted, usually the original landlord's title. *Hargrove v. Cox*, 180 N.C. 360, 104 S.E. 757. Here, however, the title of plaintiff was never admitted by defendant Weber and the relationship of landlord and tenant, if it exisited at all, was created under conditions indicating the possible presence of fraud and misrepresentation. Plaintiff's second, third and twenty-third assignments of error are without merit.

In his fifth and sixth assignments of error respectively, plaintiff contends that it was prejudicial error to allow, over his general objection, the introduction of defendant's exhibit five, an unsigned paper writing purporting to authorize, among

other things, plaintiff to rent and redecorate the house on the land in question, and defendant's exhibit seven, a copy of a cashier's check in the amount of $620.00 payable to plaintiff. Defendant neither cites authority nor advances argument to support his contention. We hold that no prejudicial error appears from the admission of the exhibits.

[3] Plaintiff makes numerous assignments of error (numbered 7, 9, 10, 11, 12, 13, 18, 19, 20, 21, 22) which all speak to the evidentiary findings and conclusions as to fraudulent representations made by plaintiff and defendant's reliance on those representations to his detriment. Plaintiff correctly argues that the general rule requires a person who can do so to read a paper before signing it and holds that his failure to do so is negligence for which the law affords no remedy. However, just as firmly established in North Carolina is the exception which is that in no case can a person escape responsibility for representations on the ground that the other party was negligent in relying on them if, in addition to making the representations, he resorted to artifice which was reasonably calculated to induce the other party to forego making inquiry. *May v. Loomis*, 140 N.C. 350, 52 S.E. 728. More specifically, it has been held that the mere fact that a grantor who can read and write, as can defendant Weber, signs a deed does not necessarily conclude him from showing, as between himself and the grantee, that he was induced to sign by fraud on the part of the grantee, or that he was deceived and thrown off his guard by the grantee's false statements and assurances designedly made at the time and reasonably relied on by him. *Taylor v. Edmunds*, 176 N.C. 325, 97 S.E. 42. See also, *Cromwell v. Logan* and *Logan v. Mercantile Co.*, 196 N.C. 588, 146 S.E. 233.

All of plaintiff's assignments of error have been considered and are overruled. The court's findings of fact are supported by competent evidence. The findings support the judgment. In the trial we find no error.

No error.

Judges HEDRICK and GRAHAM concur.