F. L. ABERNATHY AND WIFE, MINNIE H. ABERNATHY, v. J. M. SKIDMORE, J. M. CHERRY, S. H. JOHNSTON AND WIFE, M. WILLIE JOHNSTON; OLLIE HERMS AND HER HUSBAND, R. L. HERMS; LUCRETIA RAFTER AND HER HUSBAND, WILL RAFTER; ELLA YANDLE AND HER HUSBAND, A. F. YANDLE, AND E. B. JOHNSTON AND WIFE, WILLIE JOHNSTON.

(Filed 24 June, 1925.)

**Evidence—Deceased Persons—Statutes.**

C. S., 1795, prohibiting a witness from testifying to transactions and communications with a deceased person under whom the witness claimed title to lands in dispute in the action, does not exclude the testimony of the witness to a conversation between the deceased person and another, who was alive at the time.

APPEAL by plaintiffs from *Long, J.,* and a jury, at Special Term, June 16, 1924, of GASTON.

Action to reform and correct certain deeds for mutual mistake.

L. D. Johnston owned certain land in Mt. Holly, and he and his wife, on 14 December, 1907, deeded certain land and the "land in controversy" to defendant, J. M. Skidmore. Deed recorded in Book 72, p. 111.

On 28 December, 1918, the heirs of L. D. Johnston conveyed to J. M. Cherry certain land in Mt. Holly, omitting the "land in controversy." Deed recorded in Book 179, p. 426. Plaintiffs claim that J. M. Cherry, on 7 October, 1922, although contracting to do so, conveyed certain land in Mt. Holly, omitting the "land in controversy." Deed recorded in Book 154, p. 598. In this deed is the following: "The exceptions are contained in the deed executed to said Skidmore by said L. D. Johnston and wife, which is recorded in deed book 72, p. 111, in the office of the Register of Deeds of Gaston County, North Carolina."

The plaintiffs claim that prior to 7 October, 1922, J. M. Cherry and wife, in consideration of $4,500, contracted and agreed to sell plaintiffs certain land in the town of Mt. Holly, describing the land agreed to be conveyed. W. B. Rutledge, a justice of the peace, was selected to draw the deed. That believing and relying on the deed as drawn as conveying the land agreed, the consideration was arranged and the deed delivered and recorded in Register of Deeds' office for Gaston County, Book 154, p. 598.

"That the plaintiffs relied on said deed conveying the lands as contracted to be conveyed as aforesaid without any exceptions, and discovered no exceptions in such deed until on or about the —— day of May, 1923, when the defendant, J. M. Skidmore, claimed that the said lands so conveyed had been conveyed to him and that he was claiming the title and an interest in the same; whereupon the plaintiffs examined their deed and found the exceptions therein as appear from such deed." Then this action was brought by plaintiffs against J. M. Cherry, L. D. Johnston's heirs, and J. M. Skidmore, to correct or reform the deeds for mutual mistake.

The prayer of plaintiffs is as follows:

"1. That it be declared that the deed executed by said L. D. Johnston and wife to said J. M. Skidmore be reformed to conform to what was intended to be conveyed therein, as hereinbefore alleged.

"2. That the deed from the said Johnston heirs to the said J. M. Cherry be corrected and reformed so that it conveys what was intended to be conveyed by the said Johnston heirs to the said J. M. Cherry, as hereinbefore set out as aforesaid.

"3. That the deed from the said J. M. Cherry and wife to the plaintiffs be corrected and reformed so that the exceptions be stricken therefrom and the deed convey fully such lands as were intended to be conveyed by the said J. M. Cherry and wife to the plaintiffs.

"4. That if the said deeds are not corrected and reformed so as to give and grant to the plaintiffs a full and indefeasible title to the aforesaid lands, then, in that event, that the plaintiffs recover a judgment against the defendant, J. M. Cherry, and against the said Johnston heirs, in the sum of $6,500 for the breach of covenants contained in the said deeds executed by the said Johnston heirs and the said Cherry and wife.

"5. And that it be declared that the said J. M. Skidmore nor any other person than the plaintiffs have any interest or title, or are entitled to the possession of the said lands, and that the cloud, as aforesaid, be removed from the said land."

All the issues were answered by the jury in favor of defendant Skidmore.

Plaintiffs made numerous exceptions and assignments of error and appealed to the Supreme Court.

*Mangum & Denny for plaintiffs.*
*Mason & Mason and A. C. Jones for defendant J. M. Skidmore.*

CLARKSON, J. It is with some reluctance that we feel compelled to send this action back for a new trial. The case seems to have been carefully tried in the court below by the able and distinguished jurist, who for long years adorned the Superior Court bench and has since died.

Plaintiffs' exception and assignment of error No. 2,—"to the exclusion by the court below of certain evidence as hereafter appears: Mrs. Ollie Herms, witness for plaintiff.

"Q. Just state what that conversation was?

"Objection by defendant, J. M. Skidmore, on the ground that this is in purview of C. S., 1795. Counsel states that the witness is a defendant and an heir at law of the grantor, L. D. Johnston, who is dead. The defendant, Skidmore, objects to anything that was said by the witness' father, L. D. Johnston, on the following grounds: That such evidence is not admissible. The witness is not competent to testify as to the transaction or communication of her father, L. D. Johnston, because the witness is a party defendant and is called as a witness by the plaintiffs; that the plaintiffs derive a title through the witness, who claims title from her father, L. D. Johnston; that L. D.

Johnston is deceased; that the witness proposes to testify as to a transaction or communication with the deceased; that the witness is nominally a defendant, but in fact a plaintiff, as her interest is practically the same as the plaintiffs; that the matter and thing as to which the witness is asked to testify is not against the interest of the witness, but is in behalf of the interest of the witness and the plaintiffs and is against the interest of the defendant, J. M. Skidmore.

"Court: The court having sent the jury out at this time, the evidence of the witness is taken as follows; that the court may pass on same:

"Q. Just state what that conversation was. The conversation that took place between your father and Mr. J. M. Skidmore. State what was said?

"Ans. Well, I heard my father tell Mr. Skidmore he would sell him the tract of land south of this street, the first street below the house, extending west to Dutchman's Creek, for $225. Mr. Skidmore said he would take it. That is all."

C. S., 1795, is as follows: "Upon the trial of an action, or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator or survivor of a deceased person, or the committee of a lunatic, or a person deriving his title or interest from, through or under a deceased person or lunatic, by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person or lunatic; except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf, or the testimony of the lunatic or deceased person is given in evidence concerning the same transaction or communication."

The question for our decision: Mrs. Ollie Herms is a daughter of L. D. Johnston, from whom the defendant J. M. Skidmore claims title to his land. Skidmore is living, Johnston is dead. Mrs. Ollie Herms, admitting she is interested in the event, is not testifying "concerning a personal transaction," etc., but is testifying to a conversation had between her dead father and Skidmore. The mischief the statute was passed to prevent was the giving of testimony by a witness interested in the event as to a personal transaction or communication between witness and the deceased person whose lips are sealed in death. Mrs. Herms heard the conversation between her father and the defendant Skidmore, who is living and a party defendant. We think the testimony

competent. *Reece v. Woods,* 180 N. C., 631; *Johnson v. Cameron,* 136 N. C., 243; *Highsmith v. Page,* 161 N. C., 355; *Zollicoffer v. Zollicoffer,* 168 N. C., 326. We confine our decision strictly to the language in the statute. We are not inadvertent to the interesting situation disclosed in *Brown v. Adams,* 174 N. C., 490.

For the reasons given, there must be a

New trial.