C. E. FENNER, A. C. BEANE, J. N. CARPENTER, J. L. JULIAN, C. W. SHEPARD, E. H. HULSEY, AND R. B. FLINN, GENERAL PARTNERS, AND N. L. CARPENTER, SPECIAL PARTNER, TRADING AND DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF FENNER & BEANE, v. FRANCES GREEN TUCKER, ADMINISTRATRIX OF W. A. GREEN, DECEASED.

(Filed 13 April, 1938.)

1. **Contracts § 7d—Defendant's evidence held to establish that commissions related to cotton futures, and that contract was void as matter of law.**

    This action was instituted to recover commissions alleged to be due and advancements made in alleged buying and selling of cotton for the account of defendant's intestate, who was a dealer in sand.   Defendant introduced evidence of stipulations of plaintiff brokers that on all "marginal business" the brokers might close out transactions when "margins" are near exhaustion, and that either party might "call" for "margin" in accordance with variations of the market, and a letter written by intestate to the brokers referring to a "call" from plaintiffs' "margin clerk."   There was no probative evidence that the parties contemplated actual delivery of the cotton at any time.   *Held:* Under the provisions of N. C. Code, 2145, defendant made out a *prima facie* case that the cause of action was founded on illegal contracts in cotton "futures," N. C. Code, 2144, placing the burden of proof on plaintiffs to establish legality, N. C. Code, 4146, and there being no conflicting evidence requiring the submission of the issue to the jury, defendant's motion to nonsuit was properly granted.

2. **Same—**

    Ch. 236, sec. 2, Public Laws of 1931, repealing C. S., 2145, 2146, does not apply to contracts made prior to its enactment, the repealing statute being prospective in effect and not retroactive.

**3. Statutes § 7—**

Ordinarily, a statute will be given prospective effect only, and will not be construed to have retroactive effect unless such intent is clearly expressed or arises by necessary implication from its terms.

**4. Evidence § 6—**

The burden of proof constitutes a substantial right.

**5. Evidence § 32—**

A partner in intestate's firm may not testify as to transactions or communications with intestate in an action by brokers against the estate on a claim for commissions and advancements. C. S., 1795.

**6. Evidence § 45—Testimony held to contain mere conclusions and opinions of witness as to intestate's intent.**

In this action against an estate by brokers to recover commissions and advancements, defendant administratrix contended that the cause of action was founded upon illegal cotton "futures" contracts. There was no direct competent evidence as to intestate's intent in regard to whether actual delivery of the cotton was contemplated. *Held:* The exclusion of testimony of plaintiff brokers' clerk as to the intent of the parties in regard to actual delivery was properly excluded, it appearing that the testimony was merely the conclusions and opinions of the witness.

**7. Contracts § 7d—**

The intent of the parties that the merchandise contracted for should not be actually delivered is the cardinal element of a "futures" contract made illegal by N. C. Code, 2144, and the courts will disregard the form and ascertain whether the intent of the parties was to speculate in the rise and fall of the price of the commodity.

APPEAL by plaintiffs from *Hamilton, Special Judge,* at November Term, 1937, of JOHNSTON. Affirmed.

This is a civil action brought by plaintiffs to recover of the defendant the sum of $2,468.51, with interest thereon from 15 September, 1926, at six per cent per annum until paid, on an alleged account for commissions claimed to be due and for moneys claimed to have been paid out and advanced in the alleged buying and selling for the account of the defendant's intestate, W. A. Green, as his alleged brokers and agents, cotton for future delivery, on the New York Cotton Exchange, in the city, county, and State of New York, during the period from 4 February, 1926, to and including 15 September, 1926.

This action was originally commenced against the then defendant, W. A. Green, in July, 1928. At the April, 1932, Term of court plaintiffs submitted to a voluntary judgment of nonsuit, and thereafter, having paid all court costs, recommended said action in October, 1932. This second action is in all respects the same as the first action begun in July, 1928.

Following the recommencement of said action the defendant W. A. Green died, and Frances Green Tucker was duly appointed administratrix of his estate, and as such was duly substituted and made a party defendant for and in the place of the defendant W. A. Green, and said administratrix duly filed her answer within apt time.

In his answer, filed prior to his death, the said W. A. Green admitted that he gave plaintiffs certain orders; that plaintiffs advised him of certain purchases and sale and mailed to him at Selma, N. C., certain confirmations, and that plaintiffs rendered him certain statements, but denied that he was indebted to plaintiffs; and as a further defense pleaded sections 2144, 2145, and 2146 of the North Carolina Code of 1927 (known as the North Carolina Anti-Futures Statutes) as a bar to plaintiffs' right to recover. The administratrix adopted the answer of her intestate, W. A. Green, filed on 23 November, 1932, with respect to each and every allegation.

The case came on for trial at the November Term, 1937, before Hon. Luther Hamilton, special judge, presiding, and a jury. At the close of plaintiffs' evidence defendant moved for a judgment as in case of nonsuit, which motion was granted and judgment entered accordingly. The plaintiffs excepted, assigned error, and appealed to the Supreme Court. The other exceptions and assignments of error made by plaintiffs will be considered in the opinion.

*Alfred S. Wyllie and F. H. Brooks for plaintiffs.*
*Ward, Stancil & Ward for defendant.*

CLARKSON, J. At the close of plaintiffs' evidence the defendant in the court below made a motion for judgment as in case of nonsuit. C. S., 567. The motion was allowed and in this we see no error.

The action is to recover for moneys claimed to have been paid out and advanced by plaintiffs to defendant's intestate, as broker or agent, in the purchase of cotton for future delivery upon the New York Cotton Exchange. The defendant in her answer set up as a defense: "That said cotton so agreed to be purchased, or sold and delivered, was not actually delivered at the time of making said agreements to purchase, or sell and deliver, and that this defendant deposited or secured, or agreed to deposit or secure, what are commonly called 'margins' with the plaintiffs. . . . With no intention or contemplation of making any actual delivery of said cotton, but to pay or to receive the difference in price, as aforesaid, in money; and this defendant especially pleads secs. 2144, 2145, and 2146 of the North Carolina Code of 1927, in bar of the plaintiffs' right to recover herein."

Section 2144 declares certain contracts as to "futures" void— "Whereby the parties thereto contemplate and intend no real transaction as to the article or thing agreed to be delivered."

N. C. Code, 1927, sec. 2145, is as follows: *"Prima facie evidence of illegal contract in 'futures.'* Proof that anything of value agreed to be sold and delivered was not actually delivered at the time of making the agreement to sell and deliver, and that one of the parties to such agreement deposited or secured, or agreed to deposit or secure, what are commonly called 'margins,' shall constitute *prima facie* evidence of a contract declared void by the preceding section."

Sec. 2146. *Burden shifted by plea of illegality; pleadings not evidence in criminal action.* When the defendant in any action pending in any court shall allege specifically in his answer that the cause of action alleged in the complaint is in fact founded ·upon a contract such as is by this chapter made void, and such answer shall be verified, then the burden shall be upon the plaintiff in such action to prove by the proper evidence, other than any written evidence thereof, that the contract sued upon is a lawful one in its nature and purposes, and the defendant may likewise produce evidence to prove the contrary: *Provided, nevertheless,* that any allegation or statement of fact made in any pleading in any such action, or the evidence produced on the trial in any such action, shall not be evidence against the party making or producing the same in any criminal action against such party."

In the *evidence of plaintiffs* is the following: "It is further understood that on all marginal business Fenner & Beane reserve the right to close transactions when margins are near exhaustion without notice." . . . "Either party may call for a margin, as the variations of the market for like deliveries may warrant, which margin shall be kept good."

Also letter from W. A. Green (Sand), 11 March, 1926. In the very body of the letter introduced by plaintiffs we find this statement: "Have just received telegram from *your margin clerk.* . . . My trading has been limited on account of the market being so narrow and as I did not have any cotton with you at the close of business last night is the reason *this call* was made." It is common knowledge that when either party to a contract involving futures refers to *a call* they mean the deposit of more margin. This one statement clearly shows the intention of both of the parties to these *future* transactions; defendant's intestate stated he had no cotton and the plaintiffs knew they could not compel delivery. Defendant's intestate dealt in *sand* and not *cotton.* It is also interesting to note that *this call* was made by the plaintiffs' *"margin clerk."* The evidence was plenary that the dealings between the parties were on margin. There was no probative evidence that the

intent of the parties contemplated at any time actual delivery. This, under the statute, upon same being pleaded, was *prima facie* evidence of illegal contract in futures.

In *S. v. Clayton,* 138 N. C., 732 (735), is the following: "The test which the statute requires is the 'intention not to actually deliver' the articles bought or sold for future delivery. No matter however explicit the words in any contract which may require a delivery, if in fact there is no intention to deliver, but the real understanding is that at the stipulated date the losing party shall pay to the other the difference between the market price and the contract price, this is a 'gambling' contract and is null and void at common law. *Irwin v. Williar,* 110 U. S., 499; *Bibb v. Allen,* 149 U. S., 481; *Clews v. Jamieson,* 182 U. S., 461."

This matter was gone into thoroughly in *Welles & Co. v. Satterfield,* 190 N. C., 89 (94): "Cyc. Law Dictionary, under the head of 'margin,' says see 'gambling contracts,' and under such head defines 'margins': 'Money or collaterals deposited with a broker to protect contracts, usually for future delivery.' . . . 'A payment made on account by a customer to a stockbroker, under an agreement between the customer and the stockbroker in which the stockbroker agreed either to sell or to buy from the customer a certain number of shares of stock, but under which, in fact, no delivery or transfer of shares was contemplated, is known in stockbrokers' parlance as a 'margin.' *McClain v. Fleshman* (U. S.), 106 Fed., 880, 882; C. S., 2145, *supra.*"

Upon conflicting evidence as to whether or not the contract is a gambling one becomes a question for the jury under proper instructions. In the present case we see no sufficient evidence that would carry the case to the jury.

Sections 2145 and 2146 were repealed by Public Laws 1931, ch. 236, sec. 2. The repeal has no effect on this action as the contract sued on was made prior thereto. The language: "That this act shall be in force and effect from and after its ratification." *S. v. Foster,* 185 N. C., 674; *Ashley v. Brown,* 198 N. C., 369 (372). The acts are prospective, not retroactive.

In *Greer v. Asheville,* 114 N. C., 678 (681), it is said: "Unless the legislative intent to the contrary is made manifest, either by the express terms of the statute or by necessary implication arising out of it, it will, as a rule, be held to operate prospectively only—never retroactively." *Hicks v. Kearney,* 189 N. C., 316 (319).

It is well settled in this jurisdiction that the burden of proof constitutes a substantial right.

The plaintiffs contend that the court erred in excluding certain testimony of the witness, John L. Julian, for plaintiffs, and the court erred in excluding certain testimony of the witness William F. Caruso, con-

tract clerk in plaintiffs' New York office. We cannot so hold. Julian was a partner in plaintiffs' firm and he was testifying against one whose lips are sealed in death.

N. C. Code 1935 (Michie), sec. 1795, is as follows: "Upon the trial of an action, or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through, or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator, or survivor of a deceased person, or the committee of a lunatic, or a person deriving his title or interest from, through or under a deceased person or lunatic, by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person or lunatic, except where the executor, administrator, survivor, committee, or person so deriving title or interest is examined in his own behalf, or the testimony of the lunatic or deceased person is given in evidence concerning the same transaction or communication."

In *Herring v. Ipock,* 187 N. C., 459 (461), it is written: "Exclusion does not apply when witness has no interest in the result of the action. The interest which disqualifies one from testifying under C. S., 1795, *supra,* is a direct, legal, or pecuniary interest in the event of the action. *Helsabeck v. Doub,* 167 N. C., 205; *In re Gorham,* 177 N. C., 275."

The plaintiffs also contend, as stated above, that the court erred in excluding certain testimony of the witness William F. Caruso, contract clerk in plaintiffs' New York office. We cannot so hold. The gist of the illegality of the contract is the intention of both parties not to actually deliver the articles bought or sold for future delivery. The questions and answers of Caruso were directed as to whether the intention of the parties was that the cotton should be actually delivered. We think that the testimony was of no probative force as the intestate's actual intent was not attempted to be shown by direct competent testimony or admissions. From the questions and answers it appears that the answers were merely conclusions and opinions of the witness.

In *Holt v. Wellons,* 163 N. C., 124 (129-130), it is said: "Of course, the law deals only with realities and not appearances—the substance, and not the shadow. It will not be misled by a mere pretense, but strips a transaction of its artificial disguise in order to reveal its true character. It goes beneath the false and deceitful presentment to discover what the parties actually intended and agreed, knowing that 'the knave counterfeits well—a good knave.' It always rejects the ostensible for the real in looking for fraud or a violation of law. The essential inquiry, therefore, in every case is as to the necessary effect of the contract

and its true purpose. We said in *Edgerton v. Edgerton,* 153 N. C., 167: 'The form of the contract is not conclusive in determining its validity, when it is assailed as being founded upon an illegal consideration and as having been made in contravention of public policy. If, under the guise of a contract of sale, the real intent of the parties is merely to speculate in the rise or fall of the price, and the property is not to be delivered, but only money is to be paid by the party who loses in the venture, it is a gambling contract and void.' "

The defendant's intestate dealt in "sand." Such was on his letterhead introduced by plaintiffs. Yet, at the price of cotton during the seven months of dealing between the parties, 4,300 bales of cotton were involved, amounting to $387,000. There is no evidence of any delivery of this cotton, or any attempt to deliver any of it, or any demand for any delivery. On the contrary the witness William F. Caruso testified that there was never any delivery of any of the cotton involved in these transactions.

For the reasons given, the judgment of the court below is

Affirmed.