BARNHILL, J., concurring in result.
STACY, C. J., and WINBORNE, J., join in concurring opinion.
This is an action brought by plaintiff against defendant to recover $990.00 and interest from 6 November, 1933. The plaintiff contends that defendant was a nonresident of North Carolina and that a valid warrant of attachment was levied on 1,113.24 acres of land belonging to him in Richmond County, N.C. The defendant entered a special appearance and moved to dissolve and dismiss the warrant of attachment.
On motion in the cause, after reciting the facts, the clerk of the Superior Court of Moore County, N.C. rendered judgment, in part, as follows: "It is, therefore, Considered, Ordered and Adjudged by the Court that the motion of the defendant to vacate, dissolve and set aside the Warrant of Attachment issued in this cause for the reasons therein set forth, or for any reason urged by the defendant, be, and the same is hereby denied; and it is further Ordered, Found and Adjudged that said Warrant of Attachment and the levy of the same on the property of defendant by the Sheriff of Richmond County are valid and binding in law." The defendant appealed from the judgment to the Superior Court.
In the judgment of the Superior Court is the following: "It is now Considered, Adjudged and Decreed by the Court that the judgment or order of said John Willcox, Clerk of the Superior Court, of date July 20, 1938, denying the motion of the defendant to vacate and set aside said Warrant of Attachment be, and the same is hereby affirmed that the motion of the defendant to vacate and set aside said Warrant of Attachment be, and the same is hereby denied and the appeal of the defendant therefrom is hereby dismissed."
The defendant excepted and assigned error to the judgment as signed and appealed to the Supreme Court.
This case was here before on appeal. Bank v. Derby, 215 N.C. 669.
The plaintiff in its brief says: "It is not questioned that when the complaint on its face does not state a cause of action upon which a warrant of attachment may issue the warrant will be vacated upon *Page 655 
motion of the defendant upon a special appearance entered for that purpose. In the instant case, however, the complaint on its face is subject to no such infirmity and contains allegations of fact sufficient to award to the plaintiff the relief prayed for and to support the order of publication and the notice of publication, of the summons and of the warrant of attachment." S. v. Abbott, ante, 470. If the complaint does not state a cause of action, then we need not consider the summons and warrant of attachment.
The questions involved in this appeal: The record disclosed that the defendant, on 1 November, 1919, purchased 10 shares of the capital stock of the plaintiff, the Bank of Pinehurst. 10 shares, par value of $100.00 a share — total, $1,000.00. That under the impairment statute hereinafter set forth this stock was sold and purchased by plaintiff bank for $10. This action is brought, as alleged in the complaint: "That the capital stock of the plaintiff owned by the defendant as aforesaid alleged failed to bring the amount of the assessment against said stock and against the defendant as the owner thereof at the sale of said stock as aforesaid alleged, and the defendant is due and owing to the plaintiff the difference between the amount of said assessment on the stock of the plaintiff owned by the defendant aforesaid and the price said stock brought at the sale aforesaid, to wit, the sum of $990.00, with interest thereon from the 6th day of November, 1933, and the plaintiff is entitled to recover of the defendant judgment for said sum in this action." Demand for judgment for said amount.
The act under which plaintiff alleges a personal judgment against defendant is bottomed on an act of the General Assembly, 1925, ch. 117, hereafter set forth: (1) Would the maintenance of the action so impair vested rights and deny due process as to violate the recognized principles of constitutional law? We think so. (2) Is the Act of 1925, ch. 117, prospective and not retroactive, therefore inoperative in this aspect, so far as plaintiff is concerned? We think so. We think the complaint does not "state facts sufficient to constitute a cause of action." N.C. Code, 1939 (Michie), sec. 511 (6).
Section 219 (a), of N.C. Code, supra: "The stockholders of every bank organized under the laws of North Carolina, whether under the general law or by special act, shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stocks therein at par value thereof, in addition to the amount invested in such shares, except as otherwise provided. The term stockholders, when used in this chapter, shall apply not only to such persons as appear by the books of the corporation to be stockholders, but also to every owner of stock, legal or equitable, although the same may be on *Page 656 
such books in the name of another person; but shall not apply to a person who may hold the stock as collateral for the payment of a debt. Such additional liability as is provided in this section shall cease on July first, one thousand nine hundred and thirty-five, with respect to any shares which may have been or may hereafter be issued. (1921, ch. 4, s. 21; 1933, ch. 159; 1935, ch. 99, s. 1.)"
The section, supra, makes a stockholder personally liable to the creditors of a bank. This is not the present case. This action is brought under N.C. Code, supra, sec. 219 (f): "The commissioner of banks shall notify every bank whose capital shall have become impaired from losses or any other cause, and the surplus and undivided profits of such bank are insufficient to make good such impairment, to make the impairment good within sixty days of such notice by an assessment upon the stockholders thereof, and it shall be the duty of the officers and directors of the bank receiving such notice to immediately call a special meeting of the stockholders for the purpose of making an assessment upon its stockholders sufficient to cover the impairment of the capital, payable in cash, at which meeting such assessment shall be made; Provided, that such bank may reduce its capital to the extent of the impairment, as provided in section 217 (j). If any stockholder of such bank neglects or refuses to pay such assessment as herein provided, it shall be the duty of the board of directors to cause a sufficient amount of the capital stock of such stockholder or stockholders to be sold at public auction, upon thirty days notice given by posting such notice of sale in the office of the bank and by publishing such notice in a newspaper in the place where the bank is located, and if none therein, a newspaper circulating in the county in which the bank is located, to make good the deficiency, and the balance, if any, shall be returned to the delinquent shareholder or shareholders. If any such bank shall fail to cause to be paid in such deficiency in its capital stock for three months after receiving such notice from the commissioner of banks, the commissioner of banks may forthwith take possession of the property and business of such bank until its affairs be finally liquidated as provided by law. A sale of stock, as provided in this section, shall effect an absolute cancellation of the outstanding certificate or certificates evidencing the stock so sold, and shall make the certificate null and void, and a new certificate shall be issued by the bank to the purchaser of such stock; but in the event the stock of anystockholder be sold as hereinbefore provided, and the said stock when soldfails to bring the amount of the assessment against said stockholder, then,and in such event, the said stockholder shall be personally liable for thedifference between the amount of said assessment and the price brought bythe sale of the said stock." (Italics ours.) Extra Session 1921, ch. 56, sec. 3; 1925, ch. 117; 1931, ch. 243, sec. 5. *Page 657 
This section first appeared in the Act of 1921, ch. 56, amending the Act of 1921, ch. 4. Its provisions are substantially similar to the National Banking Act, which was designed principally for the purpose of strengthening banks whose capital has become impaired. Trust Co. v. Burke,189 N.C. 69. The 1925 amendment added the last nine lines, beginning with the word "but" after the semicolon. This was added to overcome the construction placed upon this section by the case cited above. The Act of 1931 substituted "commissioner of banks" for "corporation commission" formerly appearing in this section.
This statute creates a new liability and provides a special remedy for its enforcement, viz.: the sale of stock if the stockholder fails to pay assessment. This remedy is exclusive and actions on proceedings ordinarily available may not be resorted to. So a personal action against the stockholder for the difference between the price for which the stock sold and the amount of the assessment formerly could not be maintained. TrustCo. v. Burke, supra The effect of this holding, that a personal action for the difference could not be maintained, was destroyed by the 1925 amendment which specifically provides for such an action, although the general rules laid down for the construction of this section still remains applicable.
The defendant purchased his stock in plaintiff's bank on 1 November, 1919. Plaintiff is now the owner of the stock purchased according to law, under the impairment statute, supra.
In Trust Co. v. Burke, supra, at p. 73 (filed 24 January, 1925), Hoke,J., for the Court, said: "These suggestions, while to some extent involved in the inquiry, are not, as stated, definitely determined upon, and are here only referred to and approved in so far as pertinent, and as they may help to a proper apprehension of the question directly presented, to wit, the right of plaintiff to have personal judgment against defendant, a stockholder, on the assessment in the instant case for the amount of excess of the sum realized from the sale of his entire stock. For the reasons heretofore given, we are of opinion that no such recovery can be had, and the judgment overruling the demurrer must be reversed."
To meet this decision, the General Assembly on 4 March, 1925, passed the following (part of ch. 117): "`But in the event the stock of any stockholder be sold as hereinbefore provided, and the said stock when sold fails to bring the amount of the assessment against the stockholder, then, and in that event, the said stockholder shall be personally liable for the difference between the amount of said assessment and the price brought by the sale of said stock.'"
We think the provision of the General Assembly making the defendant stockholder personally liable for the stock purchased 1 November, 1919, in plaintiff's bank, under the Act of 1925, unconstitutional, as *Page 658 
being retroactive and as impairing and destroying the obligation of a contract, affecting vested rights and denying due process.
N.C. Constitution, Art. I, sec. 17, is as follows: "No person ought to be taken, imprisoned, or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property, but by the law of the land."
U.S. Constitution, Art. I, see. 10, in part: "No state shall . . . pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility."
U.S. Constitution, Amendment 14, sec. 1, in part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
It is well settled that the general laws of the State in force at the time of the execution of a contract enter into and become a part thereof.Bateman v. Sterrett, 201 N.C. 59; Rostan v. Huggins, 216 N.C. 386 (388).
In Hicks v. Kearney, 189 N.C. 316, at p. 319, it is said: "`There is always a presumption that statutes are intended to operate prospectively only, and words ought not to have a retroactive operation and unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied. Every reasonable doubt is resolved against a retroactive operation of a statute. If all of the language of a statute can be satisfied by giving it prospective action, only that construction will be given it. Especially will a statute be regarded as operating prospectively when it is in derogation of a common-law right, or the effect of giving it retroactive operations will be to destroy a vested right or to render the statute unconstitutional.' 25 R.C.L., 787; Black on Interpretation of Laws, 252. In Greer v. Asheville, 114 N.C. 678, it is said: `Unless the legislative intent to the contrary is made manifest by the express terms of the statute, or by necessary implication arising out of it, it will, as a rule, be held to operate prospectively only — never retroactively.'"
The act in controversy, Public Laws of N.C. 1925, ch. 117, supra, did not make it retroactive. If it had, it was unconstitutional. It must be construed prospectively. Wade on Retroactive Laws, sec. 34, is as follows: "Laws construed to be retroactive only when such intention clearly expressed. One of the cardinal rules by which courts are governed in interpreting statutes is, that they must be construed as prospective in every instance, except where the legislative intent that they shall act retrospectively is expressed in clear and unambiguous terms, or *Page 659 
such intent is necessarily implied from the language of the statute, which would be inoperative otherwise than retrospectively. This rule rests upon no constitutional limitation of the legislative power, but is a doctrine of the common law, founded upon the recognized injustice of a method of making laws by which the Legislature looks backward to discover past errors to be corrected and past grievances to be remedied. In all the retroactive laws there must be an element of surprise, by which the persons whose rights are affected are taken unawares. They are called upon to act in a manner different from what they had been led by the previous state of the law to anticipate. So repugnant is such a system of legislation to our natural sense of justice, that it has been stigmatized as more unreasonable than that adopted by Caligula, who was said to have written his laws in a very small character, and hung them upon high pillars, the more effectually to ensure the people," etc.
An act of the General Assembly in conflict with the Constitution is void. R. R. v. Cherokee County, 194 N.C. 781; S. v. Brockwell, 209 N.C. 209.
In Houston v. Bogle, 32 N.C. 496 (504), Pearson, J., says: "It is settled, that the Legislature cannot pass any declaratory law or act declaring what the law was before its passage, so as to give it any binding weight with the courts. A retrospective statute, affecting or changing vested rights, is founded on unconstitutional principles and consequently void. 1 Kent. Com., 455, and the cases cited." Booth v. Hairston,193 N.C. 278.
In Patterson v. Hosiery Mills, 214 N.C. 806 (812), Seawell, J., in clear language, for the Court says: "Whether the law itself makes the amendment, or as now, confers the power of amendment to the corporation, it will not be construed to operate retrospectively to the detriment of rights already vested under the old charter. Greer v. Asheville, 114 N.C. 678,19 S.E. 635; Fenner v. Tucker, 213 N.C. 419, 196 S.E. 357. A contrary construction of the statute, giving authority to the retroactive provisions of the charter amendment under consideration, would do violence to the Constitution and would compel us to view the proposed action as the taking of property without due process of law."
For the reasons given, the judgment of the court below is
Reversed.