MELVINA WINGLER AND MINDA C. LONG v. A. R. MILLER AND M. C.
WINGLER, ADMINISTRATORS OF N. WINGLER, DECEASED; A. R. MILLER,
INDIVIDUALLY, AND T. J. PEARSON AND HARRY PEARSON, SURETIES
UPON ADMINISTRATORS' BOND.

(Filed 7 April, 1943.)

**1. Trial § 37: Appeal and Error § 39f—**

Where a stipulation is entered into by counsel for plaintiffs and defend-
ants that only one issue may be submitted to the jury and the parties
waive the submitting of any other issue, on appeal the Court's considera-
tion is limited to those exceptions and assignments of error bearing on
the single issue submitted by consent.

**2. Trial § 22f: Appeal and Error § 40e—**

On motion for judgment of nonsuit the evidence is taken in the light
most favorable to plaintiffs, who are entitled to the benefit of every reason-
able intendment upon the evidence and every reasonable inference to be
drawn therefrom.

**3. Executors and Administrators § 21—**

In an action by distributees of decedent against his administrators and
surviving partner for recovery of money found on decedent's person in
his last illness and claimed by his partner, where the evidence tended to
show that decedent for many years had carried large sums of money on
his person and over six thousand dollars was found on his person at the
hospital just before his death, that he had three bank accounts, including
the partnership account, motion for judgment of nonsuit was properly
denied.

**4. Evidence § 28—**

In a suit by distributees to recover from administrators and surviving
partner money found on the person of intestate and claimed by his part-
ner, the following evidence was not prejudicial to defendants: (1) Of
the surgeon who found the money on deceased's person when he entered
the hospital, that it was done up in different packages and some of it
looked like it had been carried for a long time, especially as this witness
was allowed to give similar testimony without objection; (2) of a sister,
one of plaintiffs, that decedent carried packages everywhere he went.
"They were all around. I never saw what was in them. I don't read and
write"; (3) of the other plaintiff, that decedent carried large sums of
money on his person for 27 or 28 years and that she saw $4,000 in his
possession not long before his death, that he carried the money in pocket-
books and packages; (4) of one plaintiff, a sister, and a justice of the
peace, that plaintiffs and decedent owned a boundary of timber which was
sold for $2,600 cash, which the justice of the peace saw paid to decedent,
and the sister (witness) received $600 for her share—this does not violate
the provisions of C. S., 1795.

**5. Evidence § 32—**

In a suit by distributees to recover from administrators and surviving
partner money found on the person of decedent and claimed by his part-
ner, testimony of the partner, concerning his relations to the partnership
and the relation of certain conversations he had with deceased about the
assets of the partnership, is clearly inadmissible under C. S., 1795.

WINGLER *v.* MILLER.

APPEAL by defendants from *Johnson, Special Judge,* at October Term, 1942, of WILKES.

Civil action to recover the sum of $3,197.78 with interest from 15 January, 1940, from A. R. Miller, individually, A. R. Miller and M. C. Wingler, administrators of the estate of N. Wingler, and Harry Pearson and T. J. Pearson, sureties on the aforesaid administrators' bond.

N. Wingler died intestate in Wilkes County, N. C., on 31 December, 1939, leaving as his sole heirs at law and distributees, two sisters, the plaintiffs in this action, Melvina Wingler and Minda C. Long.

On 29 December, 1939, N. Wingler was admitted as a patient to the Wilkes Hospital, in North Wilkesboro, N. C. At the time of his admission he was in a semi-conscious condition. He had on his person various sums of money, in many small packages and in at least three pocketbooks. The money was counted by the chief surgeon of the hospital and amounted to $6,395.57. Thereafter it was turned over to the president of the Bank of North Wilkesboro, who deposited the same to the credit of N. Wingler on 30 December, 1939, in the aforesaid bank.

N. Wingler and A. R. Miller had been partners in a small mercantile business for sixteen years or more. Wingler & Miller had a savings account in the Bank of North Wilkesboro at the time of the death of N. Wingler in the amount of $1,318.08. N. Wingler had a personal savings account in the same bank at the time of his death in the amount of $1,308.71, he also carried a checking account in the Northwestern Bank of North Wilkesboro. The record does not disclose the amount on deposit in this checking account at the time of his death, neither does it disclose whether the account was carried in his name or in the name of the partnership.

A. R. Miller contends that no settlement was ever made between himself and N. Wingler and that the money found on the person of N. Wingler when he entered the hospital belonged to the partnership of Wingler & Miller, and that he is entitled to one-half of said sum, to wit, $3,197.78, being the amount in controversy in this action.

On 15 January, 1940, the aforesaid sum of $6,395.57 was equally divided between A. R. Miller and the estate of N. Wingler. The defendant A. R. Miller alleges and contends said division was made with the approval and consent of the plaintiffs, and alleges they are now estopped to maintain this action for the recovery thereof.

Plaintiffs allege and contend that by reason of fraudulent representations made by A. R. Miller to M. C. Wingler, his co-administrator, the aforesaid sum of $6,395.57 was divided as set forth above, without their knowledge or consent. Plaintiffs offered evidence tending to show that N. Wingler had carried money on his person in packages similar to those found on him at the time he entered the hospital, 29 December, 1939,

for a great many years.    Two witnesses for the plaintiffs testified that Mr. Wingler had boarded with them for nearly 16 years prior to his death, and when he came to board with them he carried "certain bags, packages or bulks of something on his person" and continued to do so through the years.    They further testified the packages were on his person when he left for the hospital.

Prior to the submission of the case to the jury, counsel stipulated as follows:

"It is stipulated between counsel representing the plaintiffs and counsel representing defendants that the Court may submit the case to the jury on one issue involving the ownership of the fund found on the person of N. Wingler and deposited in the Bank of North Wilkesboro to the account of N. Wingler on or about December 29th, 1939.

"It is further stipulated that if the issue is answered in favor of the plaintiffs, that is to say, if the jury find that N. Wingler was the owner individually of said fund, that such finding shall support a judgment against both defendants as Administrators and against A. R. Miller individually and against both the bondsmen for the amount of $3,197.78, with interest from January 15th, 1940, and the cost.

"It is also stipulated that if the issue is answered in favor of the defendants, finding that the fund did not belong to N. Wingler individually, or that the fund belonged to the partnership of Wingler & Miller, that judgment shall be entered in favor of the defendants.

"It is stipulated that the parties waive the submitting of any other issue or issues arising on the pleadings.

"It is further stipulated that all exceptions taken to the ruling of the presiding Judge by either counsel for the plaintiffs or counsel for the defendants are preserved and the right of either the plaintiffs or the defendants to appeal to the Supreme Court are in no way affected or waived by these stipulations.    The one issue submitted by consent, as follows:

"1. Was the fund found on the person of N. Wingler at the Wilkes Hospital the individual property of N. Wingler, as alleged in plaintiffs' complaint?"

The issue was answered in favor of plaintiffs, and from judgment entered thereon the defendants appeal, assigning error.

*J. Allie Hayes and Ira T. Johnston for plaintiffs.*
*Trivette & Holshouser and John R. Jones for defendants.*

DENNY, J.    The stipulations entered into by counsel for plaintiffs and defendants limit our consideration to those exceptions and assignments of error bearing on the single issue submitted to the jury by consent,

to wit, "Was the fund found on the person of N. Wingler at the Wilkes Hospital the individual property of N. Wingler, as alleged in plaintiffs' complaint?" The question of fraud on the part of A. R. Miller, the alleged mutual settlement between Miller and the estate of N. Wingler, the liability of the bondsmen, the counterclaim of A. R. Miller, etc., discussed in appellants' brief, are eliminated from our consideration by the stipulations of counsel, in the following language: "That the parties waive the submitting of any other issue or issues arising on the pleadings."

Assignments of error numbers 15 and 33 are to the refusal of his Honor to sustain defendants' motions for judgment of nonsuit lodged at the close of plaintiffs' evidence and renewed at the close of all the evidence.

There is but little evidence, one way or the other, as to the ownership of the money found on the person of N. Wingler at the time he entered the hospital. The record, however, does disclose that N. Wingler worked for a lumber company for some time and operated a store for about sixteen years prior to his death; that from 24 October, 1924, until his last illness he boarded with Mr. and Mrs. Jim Wingler, who were not related to him. Mr. and Mrs. Wingler testified that when he came to board with them he carried certain bags, or packages, on his person and continued to do so through the years. They further testified the packages were on his person when he left for the hospital. This and other evidence tends to establish the fact that N. Wingler did carry a substantial sum of money on his person for many years prior to his death. The record further discloses that for many years he had maintained three bank accounts, a checking account in the Northwestern Bank of North Wilkesboro, a savings account in the name of Wingler & Miller and a savings account in his own name in the Bank of North Wilkesboro.

When the evidence in this case is taken in the light most favorable to the plaintiffs, it is sufficient to be submitted to the jury, since the plaintiffs are entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom. C. S., 567; *Edwards v. Junior Order,* 220 N. C., 41, 16 S. E. (2d), 466; *Coltrain v. R. R.,* 216 N. C., 263, 4 S. E. (2d), 852; *Lincoln v. R. R.,* 207 N. C., 787, 178 S. E., 601; *Cromwell v. Logan,* 196 N. C., 588, 146 S. E., 233; *Brown v. R. R.,* 195 N. C., 699, 143 S. E., 536; *Robinson v. Ivey,* 193 N. C., 805, 138 S. E., 173.

The third exception is to the evidence of Dr. Hubbard, the chief surgeon of Wilkes Hospital, who found the money on the person of N. Wingler, took it out of the various packages and pocketbooks, counted it and turned it over to the president of the Bank of North Wilkesboro. In response to the following question: "What about the way it was done up in different packages, would that indicate it had been carried a

long period of time?" Dr. Hubbard answered: "Some of it looked like it had been carried a long time." The appellants contend this answer was prejudicial and that the witness expressed an opinion upon a point which was a question for the jury. We do not think this evidence prejudicial, especially in view of the fact that the witness was permitted, without objection, to testify about this money as follows: "It was in different pockets, in different packages, and in different pocketbooks. He had, I expect, at least three pocketbooks on him. They were full. It was wrapped up in different dimensions; some of it was old, dry, the edges of it worn out from use. It was practically all bills. The bills were of large denomination, several hundred-dollar bills, I remember. If I remember, they were old style, I wouldn't say most of them, but a lot of them were." This exception cannot be sustained.

Exception number 7 challenges the admissibility of the following evidence of Melvina Wingler on the ground that it is too indefinite and uncertain: "2. Please state whether or not at any time prior to his death during the years you have seen him, if you saw any pocketbooks or packages on or about his person." "A. I saw packages all around. He carried them everywhere he went. I never saw what was in those packages. I don't read and write." In view of the admission of other evidence that for many years N. Wingler did carry numerous packages of money on his person, we do not think this evidence prejudicial to the defendants. If the testimony had been prejudicial, it was negatived by the further statement of the witness that "I never saw what was in those packages."

Exception number 24 is to the admission of the testimony of one of the plaintiffs, Mrs. Minda C. Long, who testified that her brother had carried money, on his person, in small packages for many years. The first time she saw him carrying money this way was 27 or 28 years ago. She further testified that she saw in his possession not long before his death nearly $4,000.00. That he had carried his money in pocketbooks, a cloth purse, and wrapped in paper pokes. While this exception is carried forward in appellants' brief, no reason or argument is stated or authority cited in support thereof, as required by Rule 28 of the Rules of Practice in the Supreme Court, 221 N. C., 563. Therefore, this exception is taken as abandoned. *Bank v. Snow,* 221 N. C., 14, 18 S. E. (2d), 711; *S. v. Gibson, ibid.,* 252; *Brown v. Ward, ibid.,* 344.

Assignments of error numbers 9, 10, 12 and 29 are based on numerous exceptions to the testimony of Mrs. Long, relative to the sale of certain timber, and to the testimony of the justice of the peace before whom the timber deed was acknowledged. The substance of Mrs. Long's testimony was as follows: N. Wingler, Mrs. Melvina Wingler, a sister now dead, and she, owned a boundary of timber. The timber was sold for $2,600.00,

and the witness received $600 for her interest in the timber. The justice of the peace testified that he took the probate of a timber deed when N. Wingler sold some timber. That he saw the money paid over to him and it was $2,600.00; twenty-six packages of $100.00 each.

The evidence of Mrs. Long, relative to the sale of timber, was recited before the jury three times in the course of her testimony, and stricken out each time, and the jury instructed to disregard her testimony as to the sale of timber. The appellants contend that the evidence was inadmissible and by permitting it to be repeated three times, the prejudicial effects thereof could not be cured by instructing the jury to disregard it. These assignments of error cannot be sustained, since this testimony does not disclose a personal transaction or communication between the deceased and the witness about which the witness could not testify by reason of the provision of C. S., 1795. This Court said, in *S. v. Osborne,* 67 N. C., 259 : "The plaintiff, it is true, was not competent to prove any transaction between himself and his deceased guardian; but he was competent to prove any other transaction of his guardian. The transaction, in this case, was a sale of property of the plaintiff by his guardian to a third person." Substantive facts of which a witness had knowledge independently of any statement by the deceased, or any transaction with the deceased, are competent and do not come within the inhibitions of C. S., 1795. *Jones v. Waldroup,* 217 N. C., 178, 7 S. E. (2d), 366; *Collins v. Lamb,* 215 N. C., 719, 2 S. E. (2d), 863; *Ins. Co. v. Jones,* 191 N. C., 176, 131 S. E., 587; *In re Will of Saunders,* 177 N. C., 156, 98 S. E., 378; *Sutton v. Wells,* 175 N. C., 1, 94 S. E., 688. There is nothing in the testimony of this witness that tends to show she gained her information about the sale of her interest in this boundary of timber exclusively through any conversation or transaction with her deceased brother. The substance of the testimony is that she and other members of her family owned a boundary of timber. It was sold to a third party for $2,600.00, and she received $600.00 for her interest. Hence, the defendants have no cause for complaint in connection with the admission of this evidence and the subsequent exclusion thereof.

Assignments of error numbers 18, 19 and 20 are to the refusal of his Honor to permit A. R. Miller to testify concerning his relationship to the copartnership and to relate certain conversations he had with the deceased about the assets of the partnership. The evidence is clearly inadmissible. A. R. Miller is (a) a party to the action, (b) he is interested in the event of the action, and (c) N. Wingler is dead and because his lips are sealed in death Miller is incompetent to testify in his own behalf to any transaction or communication between himself and the intestate. C. S., 1795; *Turlington v. Neighbors,* 222 N. C., 694, 24 S. E. (2d), 648; *Wilder v. Medlin,* 215 N. C., 542, 2 S. E. (2d), 549; *Fenner*

*v. Tucker,* 213 N. C., 419, 196 S. E., 357; *Walston v. Coppersmith,* 197 N. C., 407, 149 S. E., 381; *Abernathy v. Skidmore,* 190 N. C., 66, 128 S. E., 475.

The remaining exceptions are without merit, or refer to evidence on other issues which were eliminated by the stipulations of counsel.

The case was one for the jury and we find no error that would justify disturbing the verdict.

No error.