ROSA P. MADDOX, ADMINISTRATRIX OF THE ESTATE OF FELIX L. MADDOX, DECEASED, v. GEORGE W. BROWN AND QUEEN CITY COACH COMPANY, A CORPORATION.

(Filed 9 June, 1950.)

**1. Trial § 22c—**

　　Contradictions in plaintiff's evidence do not justify nonsuit.

**2. Trial § 23a—**

　　If upon the whole evidence there are inferences tending to support plaintiff's case, nonsuit is properly refused.

**3. Trial § 22a—**

　　The evidence must be taken in the light most favorable to plaintiff on motion to nonsuit.

**4. Automobiles § 18h (2)—**

　　Evidence tending to show that defendant's bus was following closely behind the motorcycle ridden by intestate on the inside or passing lane of a four lane highway, that the bus, traveling 35 or 40 miles per hour in approaching an intersection with a paved highway, was overtaking the motorcycle and continuously and repeatedly sounded its horn and pulled to its left in an attempt to pass, and that, without slackening speed, the curving front on the right side of the bus struck the rear of the motorcycle on its left side, *is held* sufficient to be submitted to the jury on the issue of negligence of the bus company.

**5. Negligence § 11—**

Contributory negligence is negligence on the part of plaintiff in failing to exercise the care which an ordinarily prudent man would observe under the circumstances, which proximately concurs with the negligence of defendant in producing the injury.

**6. Negligence § 19c—**

Nonsuit on the ground of contributory negligence can be properly entered only when contributory negligence and also the conclusion that such contributory negligence proximately concurred in producing the injury, are established by plaintiff's own evidence as the sole reasonable inferences that can be drawn therefrom.

**7. Automobiles § 18h (3)—Plaintiff's evidence held not to show as matter of law that contributory negligence was proximate cause of injury.**

The evidence tended to show that intestate was riding his motorcycle in the second or passing lane of a four lane highway, followed by defendant's bus, that the vehicles were approaching an intersection with a paved highway, and that the bus, overtaking the motorcycle, repeatedly blew its horn and bore to its left in attempting to pass the motorcycle, and that the curving front of the right side of the bus hit the left rear of the motorcycle. *Held:* While the evidence may establish contributory negligence on the part of intestate, it does not establish as a matter of law that such contributory negligence proximately concurred in producing the injury, and nonsuit on the ground of contributory negligence is properly denied.

DEFENDANTS' appeal from *Patton, Special Judge,* October 3, 1949, Extra Civil Term, MECKLENBURG Superior Court.

This action was instituted in the lower court by plaintiff to recover damages for the death of her intestate husband which occurred in a collision of a passenger bus of the defendant Company and a motorcycle which the intestate was riding. At the time of the collision the defendant Brown was operating, or driving the bus as employee of the Company on one of its regular runs. It is alleged that Brown was negligent in the operation of the bus and that his negligence proximately caused the injury and death. The defendants denied negligence, and set up the affirmative plea that Maddox was contributorily negligent in producing his injury and death, if any negligence existed on their part.

The collision took place on the four-lane Wilkinson Boulevard, "Highway No. 29," leading westward from Charlotte to Gastonia, just before reaching the Berryhill Road intersection, on the Charlotte side. Both vehicles were traveling West, in the direction of Gastonia.

The two outside lanes of the highway were used for regular traffic, and the two inside lanes were used for passing. The lanes were marked off with surface stripes, with a white double line along the center of the highway.

Near the Berryhill Road intersection there were several structures, including a filling station on the right side of the highway.

The evidence is here summarized, and partly quoted from the record at points regarded by the parties as critical on review.

The weather was clear and the highway was dry. Vision was unobstructed to the west from the point of the collision, and from the direction in which the parties were traveling, for a distance in excess of 500 feet.

There was a Gulf service station on the North side of the highway, about 750 feet east of the point of collision; and on the North side of the highway at its intersection with the Berryhill Road, there is a Richfield service station. Along the 750 feet above referred to there were several residences; and there was a service station on the Southeast corner of the intersection of the highway with the Berryhill Road. The latter is a paved road.

In addition to the vehicles in collision there was a milk truck being operated by Ernest Black, Jr., (a witness), also traveling in a westerly direction in the extreme right hand lane of traffic, which was passed by the bus at a point approximately 500 feet East of the intersection of the highway and the Berryhill Road. Maddox, operating the motorcycle, was 50 to 100 feet in front of the milk truck at the time the bus passed the latter.

The bus was in the middle of the passing lane for some time before passing the milk truck, and constantly thereafter until it turned left, traveling 35 to 40 miles an hour, going on and overtaking Maddox.

The following physical facts concerning the bus and the motorcycle were in evidence, bearing upon the manner of the collision, and relative positions of these vehicles at the time:

The lower part of the bus, except the bumper, was painted red. The damage to the motorcycle, and the physical marks left upon it after the collision, were as follows: The rear number plate and bracket were bent to the left; and there was a worn place on the left handle bar grip; a worn place on the front tip of the front fender; and there was some red paint on the left side of the number plate. The motorcycle was painted black and grey. There was damage to the end of the left handlebar.

The bus was of the pusher type, so arranged inside that the driver's seat is in the front, near the windshield, this being the front of the body of the bus; there is no hood or motor in front of the driver.

After the collision the bus had the following marks of damage: There were scratches just beyond—(to the rear)—of the curved portion of the right door, from six to eight inches in length. Right below this there were marks indicating they were made with rubber. (The motorcycle handlebars were tipped with rubber handgrips, the left of which after-

wards presented the appearance of being scraped.)   The scratch was about a foot below the window of the right door of the bus.

Mrs. John Leggette testified that she was a passenger in the bus concerned in the collision; was seated on the right-hand side of the bus on the second seat from the front door entrance, next to the aisle.  Her attention was not attracted until just before the collision, when she heard the driver blowing the horn.  He was blowing it constantly; she sat up and looked straight out through the windshield.  At the time the bus was in the second lane, next to the center line; she could not tell how far it was from the front of the bus out to the man riding the motorcycle when she first saw him, because she could not see the ground between the windshield and the distance of the motorcycle.  The driver was blowing his horn and pulling to the left.  When he pulled to the left the man on the motorbike pulled to the left, every time he blew the horn and moved over the man on the motorbike moved over; "his head kept moving as we moved."  The two moved to the left more than one time.  "I couldn't answer how many times, but it was several times before the collision. We just kept moving to the left and he kept moving to the left and he kept blowing the horn.  The man kept coming over until we were in the center of the highway . . . and the man on the motorbike turned around and looked directly around at us just like that, and then it happened . . . I did not experience any sensation of the speed decreasing.  I do not have any idea of what length of time transpired from the time I looked up and saw the man until the time the collision took place."

George Wallace testified for the plaintiff that on the day of the collision he was working on the State highway; that just before the collision he went into the service station on the North side of the crossroad to get a drink.  While he was in there he heard a horn blowing, "it blowed a long time, several times, a long ways, blowed a long ways."  He further said that when he heard it he hurried up and "got done drinking" and went out, and thinking that somebody's horn got hung up, he walked out in front of the filling station.  When he looked back towards Charlotte he saw a motorcycle in the lane next to the center of the highway; when he saw the motorcycle the bus was behind about 35 feet.

When the bus driver went to pull around the motorcycle he pulled to the left and the motorcycle pulled to the left, out in front of the driver. When they came together the right wheels of the bus were right in the middle of the crack, in the middle of the highway.  The bus pulled over to the left-hand side of the highway above the filling station and stopped. He further stated what when he first saw the two vehicles they were something like about 500 feet toward Charlotte from where he was; at that time the motorcycle was in the second lane.  The motorcycle "just stayed right in front of the bus all the time, the bus driver blowing for him to

get out of the way and pulled over, too. He never did pull out of the way of the bus at all. Just stayed in front all the time."

The defense sought to impeach the witness by contradictory testimony given upon another hearing.

There was further evidence of the plaintiff with relation to the damages.

At the conclusion of the plaintiff's evidence the defendants demurred and moved for judgment of nonsuit, which motion was denied.

The defendants' evidence was substantially contradictory to that of the plaintiff. Brown, the driver, however, admitted that Maddox, riding the motorcycle, was ahead of him when he passed the intervening milk truck, but contended that Maddox turned from the right lane into the passing lane. He stated that he did not put on brakes at that time, and when the bus and motorcycle collided Maddox was thrown some feet ahead of the point of impact and that he turned to the left to avoid running over the body.

Plaintiff introduced evidence in rebuttal and rested.

At the conclusion of all the evidence the defendants renewed their demurrer and motion to nonsuit, which was overruled.

Three issues were submitted to the jury: On the negligence of the defendants; on the contributory negligence of the plaintiff; and on damages. All the issues were answered in favor of the plaintiff.

The defendants moved to set aside the verdict for errors of law, which motion was denied, and defendants excepted. To the ensuing judgment the defendants objected, excepted, and appealed.

*Smathers & Carpenter for plaintiff, appellee.*
*Robinson & Jones for defendants, appellants.*

SEAWELL, J. Our view of the record in this case leads us to the conclusion that decision must hinge on the demurrer to plaintiff's evidence and motion to nonsuit. There are numerous exceptions to the admission of evidence; and the charge to the jury is almost completely bracketed with exceptions. We have examined the record closely in these respects and do not find in these exceptions any reason to disturb the verdict.

Our discussion of the legal sufficiency of the evidence to be submitted to the jury, both on the question of defendant's negligence and that of the plaintiff's contributory negligence, must fall within familiar lines.

1. The plaintiff is not required to present a perfect case or evidence free from contradictions in its support in order to recover. *Barlow v. Bus Lines,* 229 N.C. 382, 49 S.E. 2d 793. In this case *Chief Justice Stacy,* writing the opinion of the Court, said: "Discrepancies and con-

MADDOX v. BROWN.

tradictions, even in plaintiff's evidence, are for the twelve and not for the court;" citing *Emery v. Ins. Co.,* 228 N.C. 532, 46 S.E. 2d 309; *Bank v. Ins. Co.,* 223 N.C. 390, 26 S.E. 2d 862; *Shell v. Roseman,* 155 N.C. 90, 71 S.E. 86; numerous authorities to the same effect may be found in the annotations to G.S. 1-183, at p. 233. See also, *Potter v. Supply Co.,* 230 N.C. 1, 31 S.E. 2d 908.

If upon the whole evidence there are inferences tending to support plaintiff's case, that is, evidence pointing to the proximate negligence of the defendant, motion for nonsuit cannot be allowed,—the case is for the jury, who alone may judge of its weight and dispose of its contradictions and repugnances. *Potter v. Supply Co.,* 230 N.C. 1; *Thomas v. Motor Lines,* 230 N.C. 122, and cases cited; *Gladden v. Setzer,* 230 N.C. 269, and cases cited.

It is familiar law that on demurrer to the evidence and motion to nonsuit, the evidence must be taken in the light most favorable to the plaintiff. *Wingler v. Miller,* 223 N.C. 15, 25 S.E. 2d 160; *Ross v. Atlantic Greyhound Corp.,* 223 N.C. 239, 25 S.E. 2d 852; *Lindsey v. Speight,* 224 N.C. 453, 31 S.E. 2d 371; *Atkins v. White Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209; *Buckner v. Wheeldon,* 225 N.C. 62, 33 S.E. 2d 480. See cumulative citations under G.S. 1-183.

The evidence cannot be said to be without reasonable inferences in support of the contention of the plaintiff that the defendant Brown was negligent, and that his negligence was the proximate cause of the injury and death of the intestate. Legitimate inferences from the evidence as a whole may be drawn tending to show that the defendant, after passing the milk truck, continued in the passing lane without returning to his own right-hand lane of traffic, which he might easily have done; that he persisted in following plaintiff's intestate, rider of the motorcycle, and blowing at him either continuously or continually, for approximately 500 feet before overtaking him at the point of collision; and that during said time he was constantly endeavoring to force Maddox out of his path by repeated warnings in order to pass him on the left, when his right lane of traffic was free from obstruction; that during this time, still traveling at the rate of 35 or 40 miles per hour, he brought his bus into a zone near the intersection of a paved highway in which there was an additional danger which duty required an ordinarily prudent man to observe; that very near this intersection he came in contact with the rider of the motor-cycle who lost his life by impact with the bus. Physical markings upon the two vehicles support the view that when this occurred the motorcycle rider was still in advance of the bus and received the impact first to the rear of the motorcycle on the curving front of the bus; and the testimony of Mrs. Leggette, a passenger in the bus who looked through the wind-shield and saw Maddox in advance of the bus and testified he turned his

face toward the bus and looked immediately before the collision, goes to the same effect.

The body of Maddox appears from the evidence to have been found very near the center line of the highway. The conclusion may be drawn from this evidence that the defendant did not observe due care in an attempt to pass the rider of the motorcycle to his left; and that the injury and death of Maddox might have been avoided if he had observed that degree of care necessary in negotiating the intersection or that the tragedy might have been avoided if he had decreased his speed and passed him on the right.

2. There is no difference between the negligence of a plaintiff and the negligence of a defendant in so far as the rule of measurement is concerned; both are required to exercise the care which an ordinarily prudent man would observe under the circumstances. But in either event the bare existence of negligence signifies nothing unless it is proximately concerned in producing injury and death.

The earliest case in our Reports recognizing the power of the trial judge to take a case from the jury because of the contributory negligence of the plaintiff is *Neal v. R. R., infra.*

In *Wood v. Bartholomew,* 122 N.C. 177, 29 S.E. 959, (Spring Term, 1898), *Furches, J.,* speaking then for the Court on this subject, that is contributory negligence, said: "The burden of the issue of contributory negligence is on the defendants. It is an affirmative issue and cannot be found by the Court. It must be determined by the jury. *White v. R. R.,* 121 N.C. 484, 27 S.E. 1002; *State v. Shule,* 32 N.C. 153." But in *Neal v. R. R.,* 126 N.C. 634, 36 S.E. 117, (Spring Term, 1900), the opinion of the Court, written by the same *Justice,* established an entirely novel and contradictory doctrine: stating of defendant's plea of contributory negligence of the plaintiff, "When the defendant demurred to the plaintiff's evidence, and but one construction can reasonably be drawn from it, that is, it could not reasonably mean different things, we cannot see why it did not become a question of law, as much so as if the facts stated in the evidence had been agreed to as the facts in the case. And if this is so, it certainly became a question of law for the court." *In arguendo* stating that "the function of the jury is to find the facts. This must mean disputed facts and must be exercised where there is evidence proving or tending to prove the facts disputed." (p. 406)

*Douglas, J.,* and *Clark, J.,* filed able dissenting opinions.

In one respect these questions are water in the tailrace; under this decision, which still prevails, it is within the power of the courts to determine that the affirmative plea of the defendant that plaintiff was contributorily negligent is so established by plaintiff's own evidence that it may be found by the court as a matter of law without submission to

the jury. But there comes from the history of its adoption a persistent warning to the Court to observe the narrow terms of our charter and the imminent danger of exceeding it; and that in no instance should the case go from the box to the bench unless no reasonable mind could draw any other inference than that the plaintiff was contributorily negligent upon his own evidence.

The condition is thus described in *Manheim v. Blue Bird Taxi Corp.,* 214 N.C. 689, 691, 200 S.E. 682, as : "A judgment of involuntary nonsuit on the ground of contributory negligence of the plaintiff cannot be rendered unless the evidence is so clear on that issue that reasonable minds could draw no other conclusion."

In *Conley v. Pearce-Young-Angel Co.,* 224 N.C. 211, 29 S.E. 2d 740, *Mr. Justice Barnhill,* writing the opinion of the Court, said : "Proximate cause is an inference of fact, to be drawn from other facts and circumstances. . . . It is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury or not. But this is rarely the case. Hence, what is the proximate cause of an injury is ordinarily a question for the jury. . . . It is to be determined as a fact in view of the circumstances of fact attending it." *Nichols v. Goldston, Hix v. Goldston,* 228 N.C. 514, 46 S.E. 2d 320.

We are simply "touching the base," by way of remembering the restricting condition upon which we exercise the extraordinary power conferred upon us in this way.

In the instant case, as in many others before us, the inter-action of conduct between the plaintiff's intestate and the driver of the bus at critical moments has been so interwoven with many factors entering into the situation at the Berryhill intersection that we cannot say as a matter of law that plaintiff's intestate was guilty of contributory negligence. While it is not necessary for us to indicate any opinion as to that negligence, it is of course much easier to be convinced that the plaintiff's intestate was contributorily negligent than it is to arrive at the conclusion that he was so as a matter of law.

The case was properly left to the jury on both issues and they have spoken. We find

No error.